Farook Chandiwala appeals from a summary judgment entered in favor of Pate Construction Company ("Pate") and Dillard Plastering Company ("Dillard"). We affirm.
 I. Facts and Procedural History
On August 11, 1992, Chandiwala purchased a house constructed by Pate. Dillard had applied an exterior insulation and finishing system ("EIFS") on the house when it was built. Dryvit Systems, Inc., manufactured the EIFS. EIFS, or "Dryvit," is a multilayered exterior wall system consisting of a finishing coat, a base coat, mesh, and insulation board, all of which are secured to plywood or substrate mechanically or with an adhesive. On April 20, 1998, Action Exterminators, Inc. ("Action Exterminators"), the company that had issued a termite bond on the house, performed its annual inspection. Chandiwala received a report from the April 20 inspection that contained a notice stating: "ALL CUSTOMERS: If there is any water rot or earth/wood contact, it MUST be corrected or area IS EXCLUDED and possible non-renewal next year." Chandiwala's inspection report revealed that there was improper Dryvit-to-earth contact that needed correction. Upon receipt of this inspection report, Chandiwala telephoned Action Exterminators on April 25, 1998, and his conversation with one of the representatives was documented as follows:
 "Mr. Chandiwala called about report on Dryvit contact that must be corrected. I explained in detail that he should have someone [check] his home for Dryvit to see if it was sealed. Told him that we had started seeing problems around the country and I wanted to try and avoid problems. He asked if I would recheck for him and I said I would.
 "Called Mr. [Chandiwala] back and told him that he needed to have the Dryvit cutback [sic] and sealed as I did not believe that it was."
While his deposition testimony suggests that this telephone conversation took place in May 1998, Chandiwala admits in his brief to this Court to having had the foregoing conversation on April 25, 1998. "Cut back" is a process by which a band or a section of EIFS material around the base of the house is permanently removed. Based upon his conversation with Action Exterminators, Chandiwala contacted numerous entities to inquire as to the details and costs of repairing the EIFS. One such person Chandiwala contacted was Ed Harris, who inspected the house on August 13, 1998, and reported that there were some moisture problems.
On May 1, 2000, over two years after he had received the termite-inspection report, Chandiwala sued Pate; Dryvit Systems, Inc.; Apache Products, Inc., the distributor of the EIFS; and "Troy Dillard d/b/a Dillard Plastering Company." Thereafter, on June 23, 2000, at Chandiwala's request, an EIFS inspection performed upon his house revealed several areas with moisture readings from 40-100 percent. Dryvit Systems, Inc., subsequently settled with Chandiwala, and Apache Products, Inc., was voluntarily dismissed from the action. Pate and Dillard each filed motions for a summary judgment. Chandiwala consented *Page 542 
to the entry of a summary judgment in favor of Pate and Dillard as to all claims except suppression, negligent installation, and negligent supervision, and as a third-party beneficiary to a contract. The trial court entered a summary judgment in favor of both defendants on all claims, based upon the two-year statute of limitations. § 6-2-38(l), Ala. Code 1975. The trial court denied Chandiwala's motion to reconsider. Chandiwala appeals.
 II. Standard of Review
Our review of a summary judgment is de novo. "A motion for summary judgment is granted only when the evidence demonstrates that `there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c), Ala. R. Civ. P." Reichert v. City of Mobile,776 So.2d 761, 764 (Ala. 2000). We apply "the same standard as that of the trial court in determining whether the evidence before the court made out a genuine issue of material fact." Bussey v. JohnDeere Co., 531 So.2d 860, 862 (Ala. 1988); System DynamicsInt'l, Inc. v. Boykin, 683 So.2d 419, 420 (Ala. 1996). In order to defeat a properly supported motion for a summary judgment, the nonmoving party must present substantial evidence that creates a genuine issue of material fact. "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).
 III. Analysis
Pate and Dillard maintain that they are entitled to a summary judgment based upon the two-year statute of limitations. § 6-2-38(l), Ala. Code 1975. Pate and Dillard argue that the limitations period began to run on April 25, 1998, when Chandiwala discovered that the EIFS on his house was not properly sealed and needed to be cut back.
Chandiwala argues that the limitations period did not begin to run until he discovered the actual damage, the moisture in the walls of the house, made the basis of this suit. Chandiwala does not assert in his initial brief to this Court a specific date when he learned of the damage; he merely contends that Pate and Dillard, by offering only a termite-inspection report and notes from a subsequent conversation between Chandiwala and a representative of Action Exterminators, failed to prove that the actual damage to his house was sustained more than two years before he filed his action. Chandiwala argues that his conversation with Action Exterminators on April 25, 1998, did not put him on notice that there was any actual damage to his house, but only that potential problems could result if he did not have the EIFS cut back. Chandiwala argues that even if the potential problems he was notified of constituted actual damage, the potential problems associated with the fact that the exterior walls of his house were below grade were not causally related to the damage — latent moisture damage — made the basis of this action. Chandiwala, relying on Smith v. Medtronic, Inc.,607 So.2d 156 (Ala. 1992), contends that because there is no evidence in the record of any casual relationship or link between the potential problems and the moisture damage, the two incidents are separate and distinct causes of action.
Pate and Dillard, basing their argument upon Chandiwala's contention in the trial court that he did not learn of the damage to his house until he received the June 23, 2000, inspection, maintain that Chandiwala cannot claim that he did not know about the moisture damage until after the June *Page 543 
23, 2000, EIFS inspection. Such an assertion, Pate and Dillard contend, would mean that Chandiwala's claims were not ripe for adjudication when he filed his complaint on May 1, 2000, and that the complaint, therefore, was due to be dismissed. Chandiwala contends, for the first time in his reply brief in this Court, that he first learned of the moisture damage when the August 13, 1998, inspection was performed and that the June 23, 2000, inspection served only to solidify the evidence obtained in August 1998.
Chandiwala's negligence, suppression, and third-party-beneficiary[1] claims are claims that must be brought within two years. § 6-2-38(l), Ala. Code 1975. The statute of limitations on a claim begins to run when the cause of action accrues. Home Ins. Co. v. Stuart-McCorkle, Inc.,291 Ala. 601, 285 So.2d 468 (1973). A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury. Smith v. Medtronic, Inc., supra;Garrett v. Raytheon Co., 368 So.2d 516, 518-19 (Ala. 1979). InKelly v. Shropshire, 199 Ala. 602, 604-05, 75 So. 291, 292
(1917), the rule was stated as follows:
 "`If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage [then apparent] however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; for in such a case the subsequent increase in the damages resulting gives no new cause of action. Nor does plaintiff's ignorance of the tort or injury, at least if there is no fraudulent concealment by defendant, postpone the running of the statute until the tort or injury is discovered.'"
(Emphasis added.)
The undisputed evidence in the present case establishes that the limitations period on Chandiwala's claims began to run on April 25, 1998. Documentation by Action Exterminators reveals that that was the day Chandiwala telephoned the termite company and was notified that his house had "Dryvit contact that must be corrected"; that the EIFS at the base of his house needed to be cut back because it was below grade; and that his house was not properly sealed. In fact, Chandiwala testified that the person he spoke with at Action Exterminators told him to look into the "Dryvit problem." Furthermore, the fact that Chandiwala contacted numerous entities to inquire as to details and costs of repairs to the EIFS soon after his conversation with Action Exterminators substantiates that he was aware of a problem with the exterior of his house and the need for repair. Because Chandiwala became aware of the damage to his house when he had the telephone conversation with the representative of Action Exterminators, Chandiwala's cause of action accrued on April 25, 1998, for the expense required to take the corrected measures deemed necessary by Action Exterminators. On that date, the statutory period of limitations began to run for damage developing subsequent to the initial legal injury, in this case for the moisture damage to the walls. See Kelly, supra. Chandiwala's later damage related to moisture in the walls did not give rise to a new cause of action where he *Page 544 
was on notice more than two years before the commencement of the action that the EIFS had been improperly sealed. See B BProps. v. Dryvit Sys., Inc., 708 So.2d 189 (Ala.Civ.App. 1997) (the increase in the amount of damage from discoloration and blistering of paint to water and structural damage to the exterior finishing system did not give rise to a new cause of action).
Chandiwala's reliance on Smith v. Medtronic, Inc., supra, is misplaced. In Smith, a heart pacemaker was implanted in a patient's chest in 1981. Id. at 157. During an operation in 1984, while replacing the pacemaker with a newer model, the doctors discovered defective insulation around a lead wire that they could not safely remove, and they opted to leave it inactive in the body. In 1990, the doctors discovered that the inactive lead was breaking apart and that the breaking apart of the lead wire could be fatal to the patient. Subsequently, all the existing leads, including the defective inactive lead, were removed and the pacemaker replaced. Id. at 158. The patient sued the manufacturer, alleging negligence. This Court held that the 1984 injury, which involved the insulation around the lead, and the 1990 injury, which involved the lead itself, "were separate and distinct defects in the inactive lead for which the two separate and distinct causes of action could have been maintained had injury occurred, with the limitations period beginning to run for each cause of action accordingly." Id. at 160.
Smith is distinguishable from the present case because inSmith the defective insulation around a lead wire did not cause any injury to the plaintiff at the time it was initially discovered. The plaintiff's doctor testified as follows:
 "The presence of a[n] . . . inactive lead (here, the [6972] lead) is usually of no consequence to the patient, as the body normally adapts to the presence of this inactive lead without difficulty. In my opinion, it was not injurious to [Smith] for the [6972] lead [the inactive defective lead] to be left inside his heart, and [it] had caused and was causing no physical injury to [Smith] at that time. I was further of the opinion that the [6972] lead could remain in the heart safely capped without causing harm to [Smith]."
607 So.2d at 158 (emphasis omitted; emphasis added). In this context, where the evidence showed that the defective insulation did not cause the subsequent defect in the wire itself, which resulted in the patient's injury, the Court held as follows:
 "Smith presented substantial evidence that although the allegedly defective insulation was discovered in December 1984, it produced no injury to him; that the `injury-causing malfunction' of the product at issue occurred on March 14, 1990, when he underwent surgery as a direct result of an allegedly latent defect in the inactive lead wire; that it was at that time that he could have maintained this cause of action; that it was at that time that this cause of action `accrued'; and, therefore, that it was at that time that the statutory period of limitations on this cause of action began to run."
607 So.2d at 160 (emphasis added). Where the preceding act was a benign condition in Smith causing no immediate injury, the problem reported to Chandiwala giving rise to the necessity for cutting back and sealing the exterior of Chandiwala's house cannot be described as a benign condition. Because Chandiwala neglected to make repairs at that time, he cannot now attempt to recover for the subsequent moisture damage to the walls of his house.
Because Chandiwala's claims were properly barred by the two-year statute of limitations, we pretermit discussion of *Page 545 
Pate's argument that it is not responsible for the actions of Dillard, an independent contractor.
 IV. Conclusion
We affirm the trial court's summary judgment for Pate and Dillard.
AFFIRMED.
HOUSTON, SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
[1] Chandiwala asserted that his third-party-beneficiary claim was based upon tort law. We therefore assume, without deciding, that it is governed by § 6-2-38(l), Ala. Code 1975.