[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1037 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1038 
Pearl Desouza and Kimberly Desouza appeal from a summary judgment in favor of Don Lauderdale and Sheila Lauderdale, "Lauderdale Land Company," and Joey Burgreen ("Burgreen"). The record does not reveal whether "Lauderdale Land Company" is an entity subject to suit. In their motion to dismiss, the Lauderdales asserted that "Lauderdale Land Company" was merely a trade name under which the Lauderdales do business. For purposes of this opinion, we will treat the claims against "Lauderdale Land Company" as if they are subsumed within the claims against the Lauderdales. We affirm in part, reverse in part, and remand.
The procedural history and pertinent facts in this case are as follows: On March 31, 1995, the Desouzas purchased a house in Athens from the Lauderdales. The house's exterior had been clad with an Exterior Insulation Finish System "EIFS"[1]
composed of a material more commonly known as "synthetic stucco." Shortly before purchasing the house, the Desouzas retained a house-inspection company, Home Buyer's Inspection Service, to conduct an inspection of the house. The report of that house inspection, which was conducted on March 22, 1995, failed to disclose any defect in the EIFS exterior cladding.[2] In connection with the house's purchase, the Desouzas also applied for and obtained an express warranty from the Residential Warranty Corporation. The warranty afforded the Desouzas protection for a 10-year period subject to certain exclusions and limitations.
In August 2001, the Desouzas were advised by a neighbor that they needed to consult with a particular attorney about their house. The Desouzas later met with the attorney, who informed the Desouzas that their house may have begun "deteriorating." On September 28, 2001, more than six years and six months after the Desouzas had purchased the house, the attorney filed a complaint on behalf of the Desouzas in Limestone Circuit Court, naming as defendants the Lauderdales, "Lauderdale Land Company," Burgreen, Cell Pest Control, Home Buyer's Inspection Service, and Residential Warranty Corporation, and asserting claims of negligence, fraud, breach of contract, and breach of warranty. The Desouzas alleged that their causes of action arose from the design and construction of the house. In March 2002, the Desouzas amended their fraud claim against the Lauderdales and "Lauderdale Land Company,[3] asserting *Page 1039 
that the Desouzas had discovered in November 2001 that the EIFS exterior had begun failing and was allowing moisture to intrude between the interior and exterior walls of the house. Eleven months later, the Desouzas retained an engineering firm, Jade Engineering and Inspection, Inc., to conduct an on-site inspection of the EIFS at the Desouzas' house. The firm's June 2003 report determined that the EIFS had been improperly installed and that high moisture conditions had been detected in the house's exterior walls that appeared to have emanated from the structure's roof line, windows, and doors. In May 2003, the Desouzas retained a second engineering firm, Mid-South Testing, Inc., to conduct an environmental assessment of the house. That firm's subsequent report noted visible mold growth in two areas of the house's northwest bedroom that appeared to have been caused by a leak in the roof. The report also noted elevated moisture levels in the closet area of the northwest bedroom, in the house's attic area, and around the door frame and gypsum board located near the house's front door.
In August 2003, the Lauderdales and Burgreen filed a motion for a summary judgment asserting that all the Desouzas' claims had been untimely filed and were, therefore, barred by the applicable statute of limitations. Eventually, the trial court either dismissed or entered a summary judgment as to all of the Desouzas' claims except those against the Lauderdales, "Lauderdale Land Company," and Burgreen. In July 2004, the trial court entered a summary judgment in favor of those defendants on the remaining claims in the case. The Desouzas filed a timely notice of appeal as to the summary judgment against the Lauderdales, Lauderdale Land Company, and Burgreen; the Alabama Supreme Court transferred the appeal to this court pursuant to §12-2-7(6), Ala. Code 1975.
Our review of a summary judgment is de novo.
 "An appellate court reviews a summary judgment by the same standard the trial court uses in determining whether to grant a summary-judgment motion. Pryor v. Brown Root USA, Inc., 674 So.2d 45, 47 (Ala. 1995); Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988). A summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The movant has the burden of making a prima facie showing that there is no genuine issue of material fact and that he is entitled to a judgment as a matter of law. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). If the moving party makes that prima facie showing, then the burden shifts to the nonmoving party, who then has the burden of presenting substantial evidence creating a genuine issue of material fact. Id. In determining whether the evidence creates a genuine issue of material fact, this court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wayne J. Griffin Elec., Inc. v. Dunn Constr. Co., 622 So.2d 314 (Ala. 1993). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Millican v. McKinney, 886 So.2d 841, 843 (Ala.Civ.App. 2003). Additionally, "[o]ur *Page 1040 
review is further subject to the caveat that [we] must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant." Brewer v. Woodall,608 So.2d 370, 372 (Ala. 1992).
With respect to the Desouzas' first two issues asserted on appeal, they contend, without citing to authority, (1) that Burgreen was not entitled to a summary judgment because he failed to affirmatively assert a statute-of-limitations defense in a responsive pleading and (2) that "Lauderdale Land Company" failed to file a formal summary-judgment motion. We note that the Desouzas' failure to cite legal authority in support of their argument violates the requirements of Rule 28(a)(10), Ala. R.App. P. (requiring that arguments in a brief contain "citations to the cases, statutes, other authorities, and parts of the record relied on"). "This court will not consider on appeal issues that are not properly presented and argued in brief." James v. OldRepublic Sur., 674 So.2d 615, 618 (Ala.Civ.App. 1996); see alsoSpradlin v. Birmingham Airport Auth., 613 So.2d 347, 347 (Ala. 1993). Therefore, because the Desouzas have failed to comply with the provisions of Rule 28, Ala. R.App. P., as to those two arguments, they are deemed to be waived on appeal and we pretermit further discussion of them.
The Desouzas next contend that the trial court erred in entering the summary judgment in favor of the Lauderdales and Burgreen as to the Desouzas' negligence claim because, they say, their cause of action accrued upon the discovery of the alleged defect in November 2001. The Desouzas cite Ala. Code 1975, §6-5-220(e), which allows an action to be commenced, in certain instances, within two years from the date of the plaintiff's discovery of any latent damage or defects. That discovery rule is limited to actions against an "architect, engineer, or builder." Ala. Code 1975, § 6-5-221. Section 6-5-220(a) defines a "builder" as follows:
 "Any individual, partnership, firm, or corporation that constructed, or performed or managed the construction of, an improvement, or any portion thereof, on or to real estate, and at the time of the construction was licensed as a general contractor in the State of Alabama."
The Lauderdales and Burgreen counter that the Desouzas failed to show that the Lauderdales or Burgreen were "builders" so as to subject the claims against them to the "discovery" rule. They argue that the Desouzas' negligence claim is instead subject to the provisions of Ala. Code 1975, § 6-2-(38)(l), providing that "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." The Lauderdales and Burgreen argue that the defects in the house were not latent defects; they posit that the exterior design and installation of the EIFS was the actual defect in the house and should have been discovered by the Desouzas at or before the time of the house's purchase.
It is well-settled law in Alabama that the statutory limitations period as to tort claims begins to run when the cause of action accrues. Jackson v. Secor Bank, 646 So.2d 1377, 1379
(Ala. 1994). Even if we were to accept the Lauderdales' and Burgreen's argument that the Desouzas' negligence claim is subject to the provisions of Ala. Code 1975, § 6-2-38(l), a question of material fact would still remain as to the date that the Desouzas' negligence action actually accrued. The Supreme Court in Payne v. Alabama Cemetery Association, Inc.,413 So.2d 1067 (Ala. 1982), analyzed Alabama case law generally relating to the accrual of a cause of action arising from a tort as follows: *Page 1041 
 "`The statute . . . will not begin to run until some injury occurs which gives rise to a maintainable cause of action. Garrett v. Raytheon Co., 368 So.2d 516 (Ala. 1979); Corona Coal Co. v. Hendon, 213 Ala. 323, 104 So. 799 (1925); West Pratt Coal Co. v. Dorman, 161 Ala. 389, 49 So. 849 (1909). As pointed out in Garrett v. Raytheon Co., the basic principles set forth by Corona Coal and West Pratt Coal on one hand, and Garrett v. Raytheon Co. on the other, are the same. In actions such as the case at bar, the act complained of does not itself inflict a legal injury at the time it is done, but plaintiff's injury only follows as a result and a subsequent development of the defendant's act. "In such cases, the cause of action `accrues,' and the statute of limitations begins to run, `when and only when, the damages are sustained.'" Garrett v. Raytheon Co., 368 So.2d at 519. See also, Kelly v. Shropshire, 199 Ala. 602, 75 So. 291 (1917).'"
413 So.2d at 1072 (emphasis on "damages" added). Accord, Smithv. Medtronic, Inc., 607 So.2d 156, 159 (Ala. 1992) (a party's cause of action accrues and the statute of limitations begins to run "on the date the first legal injury occurs, but not necessarily from the date of the act causing the injury").
Our Supreme Court applied this general principle in a similar case involving the alleged negligent installation of EIFS inChandiwala v. Pate Construction Co., 889 So.2d 540 (Ala. 2004). In that case, the Supreme Court held that a homeowner's negligence, suppression, and third-party beneficiary claims were barred by the operation of § 6-2-38(l), Ala. Code 1975.[4]
In Chandiwala, the homeowner brought claims against a construction company because of moisture-related problems associated with the use of EIFS exterior cladding to his house. Six years after the house's construction, Chandiwala learned from a termite-inspection company that there was improper EIFS-to-earth contact that needed correction. Chandiwala failed to correct the problem, but he filed suit more than two years later. Although Chandiwala argued on appeal that the statute-of-limitations period did not begin to run until he had discovered the actual moisture damage in the house, the Supreme Court held that the limitations period began to run on the date that Chandiwala learned about the EIFS problems, not the later date when he discovered the moisture-related problems in the house's exterior walls. Id. at 544.
In this case, the Desouzas testified via deposition and submitted affidavits indicating that they had no knowledge of any defects in the house until November 2001, when they noticed that the exterior of their house had begun to mold and mildew. The Lauderdales' and Burgreen's motion for a summary judgment presented no evidentiary materials that tended to negate the Desouzas' evidence that they first became aware of the house's moisture problems on that date. Despite the Lauderdales' and Burgreen's contention that the Desouzas should have discovered the negligent installation of the EIFS before purchasing the house, the Lauderdales and Burgreen admit on appeal that the initial house inspection that was conducted before the Desouzas' purchase revealed no problems with the EIFS cladding. Although the Desouzas may have suffered a legal injury at the time that they purchased the house, substantial evidence indicates *Page 1042 
that they did not suffer actual damage until some time after the purchase. Because a factual question exists as to when the Desouzas discovered (or, in the exercise of reasonable diligence, should have discovered) the damage to their house, the trier of fact must supply the answer.
As the summary-judgment movants, the Lauderdales and Burgreen had the burden of demonstrating that there was no genuine issue of material fact. As to the Desouzas' negligence claim, the Lauderdales and Burgreen failed to meet that burden. Thus, the Lauderdales and Burgreen were not entitled to a summary judgment as to the negligence claim, and we must conclude that the summary judgment as to the Desouzas' negligence claim was improper. Therefore, we reverse the summary judgment as to that claim and remand the cause to the trial court for further proceedings.
With respect to the Desouzas' fraud claims, the Desouzas concede on appeal that they are unable to prove that the Lauderdales[5] suppressed material facts regarding the construction of the house. However, the Desouzas assert that the Lauderdales made fraudulent misrepresentations about the house. Specifically, the Desouzas contend that two purported statements,i.e., "[t]his home is built according to regulation" and "[t]his material has been inspected," constitute material misrepresentations of fact that were made before the Desouzas entered into a contract for the purchase of the house. In their summary-judgment motion and on appeal, the Lauderdales contended that a fraud claim based upon those alleged statements is necessarily barred by the expiration of the statute of limitations.
In order to survive a motion for a summary judgment on a claim of fraudulent misrepresentation supported by a movant's proper prima facie showing that no genuine issue of fact exists, it is necessary to establish by substantial evidence the existence of a genuine issue of material fact as to four elements: "`(1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result.'" Fisher v. Comer Plantation, Inc.,772 So.2d 455, 463 (Ala. 2000) (quoting Baker v. Bennett,603 So.2d 928, 935 (Ala. 1992)). See also Foremost Ins. Co. v. Parham,693 So.2d 409, 422 (Ala. 1997); § 6-5-101, Ala. Code 1975.
Although the statements that have been attributed to the Lauderdales may be facially imprecise, we must nonetheless consider, as a threshold matter, whether the statements were false and whether the substance of those statements are material to the Desouzas' entry into the contract for the purchase of the house. With respect to the latter statement, the Desouzas admit that they retained a home-inspection service to conduct an inspection of the house before they decided to purchase the house and that that inspection subsequently failed to reveal any problems with the EIFS. Thus, we cannot conclude that the alleged statement "this [EIFS] material has been inspected" would have been false or material to the Desouzas' conduct.
Similarly, we cannot agree with the Desouzas that substantial evidence supports the proposition that the alleged statement made by the Lauderdales that the house had been built "according to regulations" was a material misrepresentation. *Page 1043 
Although Pearl Desouza testified that the Lauderdales had said to her that the house was "built by regulations," and although the Desouzas adduced affidavits of two engineering experts tending to indicate that the house's EIFS system had not been installed in a proper manner according to industry standards, the Desouzas failed to demonstrate that the installation of the EIFS violated any applicable governmental regulation or rule so as to render the alleged statement false. Indeed, for all that appears in the record, the Desouzas' house actually was constructed according to pertinent regulations, and this court cannot properly expand the zone of fraud liability so as to encompass a statement that is not demonstrably false. See Prestwood v. City of Andalusia,709 So.2d 1173, 1175, 1177 (Ala. 1997) (noting that "a false statement is an essential element of fraud" and holding that "[a] factfinder could not reasonably find that [a defendant] made a misrepresentation when not one witness could say under oath that the statement was untrue").
Because the Desouzas have conceded that the Lauderdales did not suppress any material facts, and because the Desouzas have failed to demonstrate that the two statements made by the Lauderdales upon which they allegedly relied were, in fact, false representations of material fact, we must conclude that the trial court properly entered the summary judgment in favor of the Lauderdales as to the Desouzas' fraud claim. In so concluding, we need not address the validity of the Lauderdales' statute-of-limitations defense with respect to that claim.
The Desouzas next argue that the trial court erred in entering a summary judgment in favor of the Lauderdales as to the Desouzas' breach-of-warranty claims.[6] Specifically, the Desouzas argue that the express warranty failed in its essential purpose and that the implied-warranty claim was not barred by the statute of limitations.
"An action alleging a breach of warranty is a subset of a breach-of-contract action." Turner v. Westhampton Court,L.L.C., 903 So.2d 82 (Ala. 2004). The existence of an implied warranty arising by law from the sale of a new house was first declared by this court in the case of Cochran v. Keeton,47 Ala.App. 194, 199, 252 So.2d 307, 312 (Ala.Civ.App. 1970), which was affirmed by our Supreme Court in Ex parte Keeton,287 Ala. 439, 440-41, 252 So.2d 313, 314-15 (1971). Although an implied warranty of habitability is inherent in each new house constructed within the State of Alabama, our Supreme Court held in Turner, supra, that the principle of freedom of contract permits a party to the sale of real property to effectively disclaim the implied warranty of habitability. The Supreme Court primarily relied on Alabama's version of the Uniform Commercial Code ("the UCC") in reaching its determination, stating, in pertinent part, the following:
 "In Ex parte Miller, 693 So.2d 1372, 1376 (Ala. 1997), a case decided under Alabama's version of the Uniform Commercial Code, we held that a company can limit its warranty coverage. In Southern Energy Homes v. Washington, 774 So.2d 505, 511 (Ala. 2000), we held that a warranty can require a certain method by which the warranty holder notifies the party giving the warranty of a defect covered by the warranty. See also Copenhagen Reinsurance Co. v. Champion Home Builders Co., *Page 1044 872 So.2d 848 (Ala.Civ.App. 2003). If a purchaser were to attempt to hold the seller liable when the purchaser had not notified seller pursuant to the method set out in the warranty, the seller would not be liable. While these cases are based upon Alabama's Commercial Code, we see no reason to limit the rule to cases concerning `goods'. Rather, we are led by the principle of freedom of contract. Therefore, we hold that companies selling houses are similarly capable of limiting warranty coverage."
903 So.2d at 91.
It is undisputed that the Desouzas entered into an express-warranty agreement with the Lauderdales and with a former codefendant, Residential Warranty Company ("RWC"). The warranty agreement provided structured coverage for the first 10 years following the purchase of the house. Pursuant to the terms of the warranty, coverage was warranted by the Lauderdales for the first two years after purchase. Warranty coverage in years 3 through 10 after the purchase of the house was to be provided by Western Pacific Mutual Insurance Company ("WPIC"), a risk-retention group. According to the provisions of the warranty, the Desouzas were required to notify either the Lauderdales or RWC of any purported defect in the house during the first two years after purchase. For years three through ten, the Desouzas were required to notify only RWC for a determination of coverage. After having received notification, RWC was required under the provisions of the contract to issue a response and to conduct an investigation and a subsequent mediation proceeding. If the purported defect had not been resolved by the parties after those actions, the claim was to proceed to binding arbitration.
Although Article 2 of Alabama's version of the UCC does not apply to real-estate transactions, see Harden v. Ritter,710 So.2d 1254, 1256 (Ala.Civ.App. 1997), that article, as Turner,supra, makes clear, is nonetheless persuasive in our analysis of the Desouzas' warranty claims. Section 7-2-719(1)(a), Ala. Code 1975, part of Alabama's version of the UCC, provides that the parties to an agreement "may provide for remedies in addition to or in substitution for those provided for in this article and may limit or alter the measure of damages recoverable under this article as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts. . . ." "Where the parties have set out in a written contract the warranties agreed upon and have provided a remedy in case of a breach of warranty, the remedy thus provided is exclusive." See McDonald v. Schwartz,706 So.2d 1230, 1232 (Ala.Civ.App. 1997); and Ala. Code 1975, §7-2-719(2).
In this case, the limited warranty entered into by the parties specifically provided that "the builder is the warrantor during the first two years of the agreement." The warranty further provided that after the second year of the warranty, "WPIC will protect your home for a period of eight years against loss resulting from [m]ajor [s]tructural [d]efects." In light of the fact that the Desouzas have consistently asserted that they failed to discover the defects until November 2001, approximately seven years after the effective date of the warranty, we must conclude that the Desouzas' exclusive contractual remedy was limited to one involving WPIC, and not the Lauderdales.
To prevail on their claim that the Lauderdales breached an implied warranty of habitability, the Desouzas must adduce by substantial evidence that that implied *Page 1045 
warranty had not been disclaimed. We again turn to the UCC, as codified in Title 7, Art. 2, Ala. Code 1975, for guidance.
Section 7-2-316(2), Ala. Code 1975, allows a seller to exclude implied warranties of merchantability and fitness by including in the contract a "conspicuous" written statement disclaiming those warranties. A term is conspicuous when it is "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." Ala. Code 1975, §7-1-201(b)(10). "Whether a term or clause is `conspicuous' or not is a decision for the court." Id. "Conspicuous terms include the following:
 "(A) A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
 "(B) Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language."
Ala. Code 1975, § 7-1-201(b)(10)(A), and (b)(10)(B).
The cover page of the limited-warranty booklet that the Desouzas received states in all capital letters the following:
 "THIS LIMITED WARRANTY DOES NOT COVER CONSEQUENTIAL OR INCIDENTAL DAMAGES. LIABILITY UNDER THIS LIMITED WARRANTY IS LIMITED TO THE FINAL SALES PRICE LISTED ON THE APPLICATION FOR WARRANTY FORM.
 "THE BUILDER MAKES NO HOUSING MERCHANT IMPLIED WARRANTY OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, IN CONNECTION WITH THE ATTACHED SALES CONTRACT OR THE WARRANTED HOME, AND ALL SUCH WARRANTIES ARE EXCLUDED, EXCEPT AS EXPRESSLY PROVIDED IN THIS LIMITED WARRANTY. THERE ARE NO WARRANTIES WHICH EXTEND BEYOND THE FACE OF THIS LIMITED WARRANTY."
The "Introduction" section, which is the second paragraph of the booklet, is set apart in all capital letters and states the following:
 "THIS AGREEMENT INCLUDES PROCEDURES FOR INFORMAL SETTLEMENT OF DISPUTES, INCLUDING BINDING ARBITRATION, IN ACCORDANCE WITH THE PROCEDURES OF THE FEDERAL ARBITRATION ACT; SEE SECTIONS A.5.F-G. ADDITIONAL INFORMATION MAY BE RECEIVED BY CALLING RWC AT 717-561-4480. YOU SHOULD READ THIS AGREEMENT IN ITS ENTIRETY IN ORDER TO UNDERSTAND THE PROTECTION IT AFFORDS, THE EXCLUSION APPLICABLE TO IT, THE WARRANTY STANDARDS WHICH WILL GOVERN ITS INTERPRETATION AND OPERATION, AND THE PURCHASER'S RESPONSIBILITIES."
The warranty-disclaimer provision in the express-warranty booklet disclosed that any implied warranties potentially arising under law were excluded. The provision was printed in all capital letters and in a print that was larger than the print used in the remainder of the booklet. In addition, we note that the warranty directed the Desouzas to read the agreement in its entirety in order to understand the protection *Page 1046 
that the warranty would afford and the exclusions that would apply under the warranty.
The record on appeal reflects that the Desouzas were not uneducated consumers. Kim Desouza and Pearl Desouza had obtained baccalaureate degrees in business; Pearl Desouza had additionally earned a master's degree in special education and was employed as a special-education teacher at the time that she and her sister contracted to purchase the house. The Desouzas have adduced no evidence that they did not agree to disclaim all implied warranties in entering into the limited express warranty in connection with the purchase of their house. Therefore, we are compelled to conclude that the trial court did not err in entering the summary judgment in the Lauderdales' favor as to the Desouzas' breach-of-warranty and contract claims. Thus, we pretermit any discussion as to whether those claims were untimely filed.
In summary, we conclude that the trial court erred in entering a summary judgment in favor of the Lauderdales and Burgreen on the claim of negligence. However, the trial court did not err in entering a summary judgment on the other remaining claims asserted against the Lauderdales and Burgreen. We remand the case to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON, MURDOCK, and BRYAN, JJ., concur in the result, without writing.
[1] "EIFS is a multilayered exterior wall system consisting of Styrofoam insulation board glued to the exterior wooden substrate previously affixed during construction of the house, a base coat into which is embedded mesh, and a finish coat designed to look like stucco." Keck v. Dryvit Sys., Inc., 830 So.2d 1, 3 (Ala. 2002).
[2] The report prepared by Home Buyer's Inspection Service does state that some "patching and touch up" was needed on the house's exterior and that "membrane" was visible at the right side of the garage.
[3] The amended complaint, which supplanted the fraud count in the Desouzas' original complaint, did not allege a claim against Burgreen. In fact, the record on appeal does not reveal the nature of Burgreen's relationship to the Lauderdales or the Desouzas.
[4] It does not appear that the parties in Chandiwala argued that Ala. Code 1975, § 6-5-220 et seq., applied to the homeowner's claims.
[5] The Desouzas' amended complaint did not allege fraud against Burgreen. See note 3, supra.
[6] Although the Desouzas' complaint also alleged claims of breach of warranty and breach of contract against Burgreen, the record on appeal reflects that Pearl Desouza testified via deposition that the Desouzas had never entered into a contract with Burgreen.