CRAWLEY, Presiding Judge.
In March 2001, Deborah Eady and her son, Jason Eady, went to the premises of Crews Mobile Homes, Inc., to view some mobile homes because Jason was considering purchasing one. Jason had asked Deborah to co-sign on a loan with him. Deborah originally agreed to co-sign with Jason; in fact, she executed several documents pertaining to the sale of a mobile home to Jason. However, certain of those documents contained errors, and Jason and Deborah were told that they would have to execute the documents again. Deborah began to have misgivings about co-signing the loan; she did, however, execute the documents a second time. When Crews informed Jason and Deborah that the second set of documents were also invalid, Deborah told Jason that she would not co-sign the documents. Jason told Crews that Deborah would not sign the documents; allegedly, Crews told Jason that he could sign Deborah’s signature on the documents, and Jason did so. Jason did not inform Deborah that he signed her name to the documents relating to his purchase of the mobile home.
In July 2004, Green Tree-AL, LLC, the company with which the purchase of the mobile home was financed, sued Jason and Deborah, alleging that they had defaulted on the payments due under the installment sales contract for the mobile home. On October 7, 2004, Deborah filed a counterclaim against Green Tree, a cross-claim against Jason, and a third-party complaint against Crews. Deborah’s third-party complaint alleged that Crews had been negligent and/or wanton when it knowingly accepted her forged signature on the sales and financing documents and alleged that Crews had conspired with Jason to conceal the fact that Jason had forged Deborah’s signature on the sales and financing documents. Thereafter, Green Tree and Deborah entered into a stipulation of dismissal without prejudice regarding Green Tree’s claims against Deborah.
After filing its answer to Deborah’s third-party complaint, Crews filed a motion for a summary judgment against Deborah, arguing that her claims against it were barred by the applicable two-year statute of limitations, which, Crews contended, had expired on or about March 21, 2003. Deborah responded to the summary-judgment motion by arguing that her cause of action against Crews had not accrued until such time as she was actually damaged by the forging of her name on the sales and financing documents, i.e., once she was sued by Green Tree based on her apparent liability under the financing documents for Jason’s default on the payments. The trial court entered a summary judgment in favor of Crews, which it later made final pursuant to Rule 54(b), Ala. R. Civ. P. Deborah timely appealed to this court, which transferred the appeal to the supreme court because of our lack of subject-matter jurisdiction, see Ala.Code 1975, § 12-3-10; the supreme court then transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 *906 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
Crews argues that Deborah’s cause of action against it accrued on or about March 21, 2001, when Jason signed her name to certain documents in connection with the sale of a mobile home to Jason. Relying on Gilmore v. M & B Realty Co., 895 So.2d 200, 208 (Ala.2004) (quoting Chandiwala v. Pate Construction Co., 889 So.2d 540, 543 (Ala.2004)), Crews argues that Deborah’s cause of action accrued on the date that Jason signed her name to the sale and financing documents because she would have been able to maintain an action against it on that date despite the fact that her full damages had not yet accrued. Indeed, Gilmore does reiterate the principles that “ ‘[t]he statute of limitations on a claim begins to run when the cause of action accrues’ ” and that “ ‘[a] cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of damage is apparent at the time of the first legal injury.’ ” Gilmore, 895 So.2d at 208 (quoting Chandiwala, 889 So.2d at 543). To better understand the application of these principles, we will examine Gilmore.
In 1993, the Gilmores responded to an advertisement placed by M & B Realty Company (“M & B”) advertising for sale houses upon which the Department of Veterans’ Affairs (“VA”) had foreclosed. Gilmore, 895 So.2d at 204. The realtor showed the Gilmores a house located at 4361 Bayou Drive in Theodore, Alabama. Id. at 205. However, the house on which the VA had foreclosed was actually located at 4360 Bayou Drive. Id. To confuse the situation even more, the VA paperwork listed the address of the house as 4369 Bayou Drive, an address that did not exist. Id. at 204. The Gilmores eventually made an offer on the house located at 4361 Bayou Drive and, ultimately, purchased the property on which the VA had foreclosed. Id. at 205. The Gilmores lived in the house located at 4361 Bayou Drive for over five years beginning in November 1993; on April 11,1999, L.K. Crenshaw appeared on their doorstep and announced that he owned the house at 4361 Bayou Drive. Id. at 207. Upon investigation, the Gilmores discovered that, in fact, they owned not the house located at 4361 Bayou Drive but instead the house located across the street at 4360 Bayou Drive, which was occupied by others and was in a dilapidated condition. Id. In August 2000, the Gilmores sued M & B and others, alleging, among other things, negligence and wantonness against M & B. Id. at 203 & 208. The trial court entered a summary judgment in favor of M & B without stating a ground. Id. at 203.
On appeal, the parties both agreed that the trial court likely entered a summary judgment on the negligence and wantonness claims against M & B on the basis that the two-year statute of limitations had run on those claims before the Gilmores filed their action. Id. The Gilmores argued in their brief on appeal “that they experienced no injury at the time of the closing of the transaction on November 24, 1993, but rather that ‘the injury occurred when the true owner of the house first appeared at the [Gilmores’] doorstep in 1999.’ ” Id. at 207-08. In response to this argument, the court stated that “the Gil-mores misperceive the law” and proceeded to an analysis of whether the statute of limitations had run on the negligence and wantonness claims. Id. at 208. After *907 stating the general rules governing the accrual of a cause of action as quoted above, the court explained that, “[h]ad the Gilmores learned the true nature of the property mix-up immediately after the transaction closed and they began occupying the premises, they could have begun prosecution then of the same negligence and wantonness claims they asserted in August 2000.” Id.
The injury to the Gilmores occurred on the date of closing when they purchased a house they had not been shown and would not have desired to purchase and began living in a house that they did not actually own. They would have been able to maintain a cause of action alleging negligence and wantonness on the date of closing. Thus, their cause of action against M & B accrued on that date.
Deborah argues that her injury did not occur on the date that Jason signed her name to the sales and financing documents. Deborah says that she suffered no injury merely as a result of having her name forged. Instead, she argues, she was not injured until she had to defend the action filed by Green Tree. Based on Ex parte Floyd, 796 So.2d 308 (Ala.2001), we agree with Deborah.
Ex parte Floyd, like the present case, involved a forged instrument. In Ex parte Floyd, however, the instrument was a “Full Satisfaction of Mortgage” and the defendant was the notary who had improperly notarized the instrument. The problem began when, in June 1996, Diversified, Inc., sold some real property to Trantham Enterprises, Inc.; the purchase was accomplished by a small cash payment accompanied by a $22,500 note secured by a mortgage. Ex parte Floyd, 796 So.2d at 304. The mortgage was recorded in the Jefferson Probate Court. Id. Trantham Enterprises in turn sold the real property to James Lay doing business as Kenco Investments. Id.
In January 1997, Kristie Wilson, a notary public, was presented a document to notarize. Id. at 304. That document, which was entitled “Full Satisfaction of Mortgage,” purported to recognize the complete satisfaction of Trantham Enterprise’s debt to Diversified that was secured by the mortgage. Id. at 305. The signature on the document was purportedly that of “Joel Williams,” who was described as the “Vice President” of Diversified. Id. However, the acknowledgment on the document described the signatory as Bobby Floyd, the president of Diversified. Id. Wilson notarized the document despite the discrepancy, and it was subsequently recorded in the Jefferson Probate Court. Id.
Colonial Bank loaned money to Lay, based on what appeared to be his clear title to the real property. Id. Colonial Bank eventually foreclosed on the mortgage, recorded a foreclosure deed, and, on September 29, 1998, moved to intervene in a lawsuit involving Diversified and Floyd to assert its claim that its mortgage was superior to the one held by Diversified. Id. Diversified, of course, maintained that its mortgage was superior. Id. The outcome of that action was not clear from the record in Ex parte Floyd. Id.
In February 1999, Diversified sued Wilson and her bond company, alleging that she had negligently exercised her duty as a notary public. Id. The defendants sought to have the complaint dismissed because, they argued, it was filed outside the two-year statute of limitations. Id. They argued that the statute of limitations began to run on the date that Wilson had notarized the forged document. Id. at 305-06.
*908 Our supreme court disagreed. It explained when a statute of limitations commences to run thusly:
“In Garrett v. Raytheon Co., ... 368 So.2d [516,] 518-19 [ (Ala.1979) ], this Court stated:
“ ‘The very basic and long settled rule of construction of our courts is that a statute of limitations begins to run in favor of the party liable from the time the cause of action “accrues.” The cause of action “accrues” as soon as the party in whose favor it arises is entitled to maintain an action thereon.
[[Image here]]
[T]here are cases where the act complained of does not itself constitute a legal injury at the time, but plaintiffs injury only comes as a result of, and in furtherance and subsequent development of, the act defendant has done. In such cases, the cause of action “accrues,” and the statute of limitation^] begins to run, “when, and only when, the damages are sustained.” ’
“(Quoting Kelley v. Shropshire, ... 199 Ala. [602,] 605, 75 So. [291,] 292 [ (1917) ].) Thus, if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run.”
Ex parte Floyd, 796 So.2d at 308.
The court noted that the satisfaction-of-mortgage document was void because it was forged. Id. That fact, according to the court, did “bear on the analysis of the timing of Diversified’s injury.” Id. The court went on to explain that Diversified appeared to be the victim of wrongdoing by those responsible for the forged satisfaction-of-mortgage document and concluded that, there being no evidence indicating that “Diversified had prior knowledge of a cloud on its title” or that Diversified had “incurred any loss or expense as a result of having that knowledge,” the statute of limitations on Diversified’s claim against Wilson would have begun to run at “the time when it incurred actual damage as a result of Wilson’s actions,” which was when Diversified was required to defend its title when Colonial Bank first asserted the priority of its mortgage — September 29, 1998. Id. at 308. Because Diversified’s complaint was filed on February 8, 1999, which was within two years of September 28, 1998, the court reversed this court’s affirmance of the trial court’s dismissal of Diversified’s complaint on statute-of-limitations grounds. Id. at 309.
Based on the principles espoused in Ex parte Floyd, Deborah’s injury did not occur on the date Jason signed her name to the sales and financing documents. Deborah incurred no liability on that date because her signature was a forgery. Ala. Code 1975, § 7-3-401(a)(i) (“A person is not hable on an instrument unless ... the person signed the instrument.”); see also Ex parte Floyd, 796 So.2d at 308 (“A forged instrument is void.”). Because there is no evidence indicating that Deborah had any knowledge of the forged signature on the sales and financing documents or that she had suffered any loss or had gone to any expense as a result of the forged documents, until Deborah had to defend Green Tree’s action, she had suffered no injury and therefore had no cause of action against Crews to maintain. Ex parte Floyd, 796 So.2d at 308. That is, Deborah’s cause of action did not accrue at the time Jason forged the documents but instead accrued in July 2004, when Jason defaulted on the payments and Deborah had to defend the action *909 filed against her by Green Tree. Thus, the trial court incorrectly entered a summary judgment in favor of Crews based on its statute-of-limitations argument. The judgment is therefore reversed, and the cause is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK and BRYAN, JJ., concur in the result, without writing.