BOLIN, Justice.
Richard L. Watters petitions this Court for a writ of mandamus directing the Mobile Circuit Court to vacate its order denying his motion for a summary judgment as to count one of an amended complaint filed by Michael J. Gamble, in Gamble’s capacity as administrator of the Estate of Barbara Ruth Findley Long (“Long”), deceased; count one asserts a legal-malpractice claim against Watters under the Alabama Legal Services Liability Act, Ala. Code 1975, § 6-5-570 et seq. (“the ALS-LA”), alleging breach of a fiduciary duty. We deny the petition.

I. Facts and Procedural History

This proceeding involves title to real property located in Conecuh County, which was owned by Robert A. Findley at the time of his death. At the time of his death, Findley was survived by his wife, Barbara Joan Findley, and his three natural children—Long, Robert A. Findley II, and James C. Findley. Barbara Joan Findley is Long’s stepmother; Robert A. Findley II and James C. Findley are Long’s half brothers. Although Findley had a will, no letters of administration or *176 letters testamentary were applied for or granted by any court concerning his estate.
On October 9, 2002, Long retained Wat-ters & Associates, of which Watters was a partner, to represent her “in obtaining estate assets” of Findley, her deceased father. The 2002 employment contract between Watters and Long contained the following contingency-fee provision:
“33 1/3% if settled with or without suit.
“40% if the case has to proceed to trial.
“50% if an appeal is taken from the lower court by either side.”
The employment contract also provided, in pertinent part:
“In the event that [Long] desire[s] to dismiss the Firm and retain other counsel to represent [her] interests in any matter encompassed by this agreement, it is understood that [Long] agreefe] to pay all fees, costs, and expenses incurred by [her] or on [her] behalf up to and including the date of dismissal. In the event of such dismissal, [Long] agree[s] that as part of the computation of a reasonable fee, [she has] agreed that each specific service rendered by [Watters] will be billed at a rate of $125.00 per hour out of court and $150 per hour in court.
[[Image here]]
“This contract and agreement does not include any work other than representation of [Long] in the above matter, and in the event any work other than said work is necessary, both [Long] and the Firm will consider said work as a separate and distinct cause of action requiring new fee arrangements.
“Should the Firm have to pursue legal recourse against [Long] for the collection of fees and/or expenses which are due by [Long] to the Firm under the terms of this agreement then it is further agreed that [Long] shall pay interest at the rate of 18% per annum on outstanding balance and further agree to pay a reasonable attorney fee if necessary for the collection of said balance.
“... This Contract contains the entire agreement between the parties regarding matters described herein and super-cedes all prior oral or written agreements. This agreement may only be amended in writing by the parties and not by any subsequent course of conduct between anyone.”
(Emphasis added.)
On July 5, 2003, Watters filed in the Conecuh Circuit Court an action against Findley’s other heirs at law, seeking a judgment declaring Long’s ownership in family property located in Conecuh County.[1] On January 20, 2004, the Conecuh Circuit Court entered a judgment, declaring that Long owned a one-sixth interest (approximately 30 acres) in the Conecuh County property (hereinafter referred to as “the Conecuh property”). On July 7, 2004, Watters received written notice from Long that she was discharging Watters from any further representation in the de *177 claratory-judgment action. On July 13, 2004, Watters filed an attorney’s lien against the Conecuh property pursuant to § 34-3-61, Ala.Code 1975, to secure the payment of his attorney fees in the case. The materials before us do not disclose what action, if any, Watters took in enforcing the attorney’s lien.
Long’s stepmother and half brothers subsequently conveyed to a Long a quitclaim deed conveying title to the Conecuh property; the deed was dated October 7, 2004. Watters did not file the quitclaim deed in the Conecuh Probate Court until January 27, 2006. Accordingly, the tax-assessment notices for the Conecuh property continued to be sent to Long’s deceased father’s address. The 2005 taxes on the Conecuh property were paid by Long’s cousin, Larry Findley; the 2006 taxes on the property were not paid; and on May 2, 2007, Larry Findley purchased the property at a tax sale.
Watters claims that while he was representing Long in another matter concerning certain real property in other counties, he discovered that the Conecuh property had been sold to Larry Findley at a tax sale; that he informed Long of the sale; that he advised Long that she needed to redeem the property before the statutory-redemption deadline; that Long did not have the money to redeem the property; that Long asked Watters if he could find someone to loan her the money to redeem the property; that Watters told Long that his friend, Ted Langley, would loan her the money to redeem the property on the condition that Long sign' a quitclaim deed conveying the property to a partnership, not yet formed, that would include Watters as a member; that Watters told Long that Langley would not record the quitclaim deed if Long repaid the loan within 30 days of redeeming the property; that, in the event the deed was recorded, any claim Watters might have against Long for services rendered regarding her deceased father’s estate would be satisfied; and that Watters and Long agreed to Langley’s terms concerning the loan arrangement. This arrangement was never reduced to writing.
On March 26, 2010, Long executed a quitclaim deed prepared by Watters, conveying title to the Conecuh property to “Langley & Watters, LLP.” On March 30, 2010, Watters submitted to the Conecuh Probate Court a letter, enclosing “his client’s” application for redemption of the Conecuh property; the October 7, 2004, quitclaim deed associated with the property; and a check from Watters & Associate’s trust account representing the redemption amount of $19,186.79. On March 31, 2010, the Conecuh Probate Court issued a “decree of payment” certifying Long as the new owner of the Conecuh property and ordering that the excess amount of $16,865.51 be paid to Watters & Associates. Watters subsequently sent Long a letter, dated June 25, 2010, thanking her for the payment his office had received and inquiring from her when she could pay the $2,321.28 Langley had loaned her to redeem the property—because Langley was concerned about his investment and insisting that Watters record the quitclaim deed. According to Wat-ters, Long told Watters to go ahead and record the quitclaim deed in exchange for the attorney fees she owed him for representing her in the Conecuh County deelar-atory-judgment action concerning her interest in her deceased father’s estate. On October 20, 2010, Watters recorded the quitclaim deed conveying the Conecuh property to Langley & Watters, LLP, in the Conecuh Probate Court; Watters represented to the probate court that the value of the property was estimated to be approximately $54,000.
*178 Long died on April 2, 2013, and on October 9, 2013, the Conecuh Probate Court appointed Gamble as administrator of Long’s estate. On March 6, 2014, Gamble filed a complaint against Watters,[2] asserting claims of legal malpractice under the ALSLA for breach of fiduciary duty (count one); vicarious liability (count two); and aiding/abetting (count three); Gamble requested a jury trial on those claims. Gamble also included an equitable claim seeking to quiet title to the Conecuh property (count four). On April 8, 2014, Gamble filed an amended complaint to add certain equitable claims to count one. Count one of the amended complaint, which Gamble labels “Legal Services Liability Action Against Defendant Watters ... Breach of Fiduciary Duty” alleges the following factual allegations:
“21. Sometime in late 2009 or early 2010, but well in advance of the deadline for Ms. Long to redeem her land, a third party[3] (a person known to Defendant Watters) contacted Defendant Watters and informed Watters about the May 2 purchase at tax sale of [the Conecuh property] and the need for prompt action to accomplish a redemption.
“22. Neither Ms. Long nor Defendant Watters were aware of the tax sale prior to the third party revealing that information to Defendant Watters.
“23. The deadline for redemption approached and no steps had been taken to accomplish the redemption. The third party contacted Defendant Watters a second time and warned of the approaching deadline and that time was of the essence.
“24. Specifically, the third party offered to make available to Defendant Watters on behalf of Ms. Long funds sufficient to enable Ms. Long to redeem [the Conecuh property].
“25. The offer by the third party was for an interest-free, unsecured loan.
“26. Defendant Watters assured the third party that Ms. Long was aware of the situation and that she had confirmed to Defendant Watters that she had made arrangements to fund the redemption of [the Conecuh property].
“27. Defendant Watters told the third party that Defendant Watters would contact the third party if it appeared Ms. Long was having difficulty securing the funds needed to accomplish the redemption.
“28. Defendant Watters had no reason to doubt that the third party could and would make good on the offer.
“29. [The Conecuh property] had appreciated significantly in value as numerous producing oil wells had been established in close proximity to the [Co-necuh property].
“30. Producers and leasing agents were paying significant bonuses to obtain oil and mineral operating leases over land in close proximity to and adjacent to [the Conecuh property]. Ms. Long had been paid approximately $8,000 in August of 2006 for a three-year oil and mineral lease of [the Conecuh property].
“31. Defendant Watters ... knew about the development of the oil wells in the area and knew that [the Conecuh property] had increased substantially in value; Defendant Watters ... knew the [Conecuh property] had a potential of providing the owner of the mineral *179 rights a substantial bonanza if a producing oil well servicing [the Conecuh property] were established; [Watters] knew all of this prior to entering into the financial arrangement with Ms. Long, set out below.
“32. Defendant Watters anticipated that Ms. Long would have significant difficulty raising the money to accomplish the redemption; Defendant Wat-ters knew Mr. Long subsisted on a small [S]ocial [S]eeurity income of less than one thousand dollars per month; Defendant Watters knew Ms. Long had no other source of income; Defendant Wat-ters knew Ms. Long was indebted to him for legal fees arising out of his previous representation of her; Defendant Wat-ters knew Mr. Long was indebted to him for massive legal fees arising out of the on-going morass of litigation against Ms. Long’s cousin in the matter of her uncle’s estate.
“33. Ms. Long did not come up with the funds needed to accomplish the redemption.
“34. Defendant Watters did not inform Ms. Long that interest-free funds were available to accomplish the redemption.
“35. Defendant Watters did not contact the third party to enable Ms. Long to take advantage of the offer extended by the third party.
“36. Defendant Watters unilaterally made the decision not to avail Ms. Long of the offer from the third party and did so with the intent to maneuver Ms. Long into a desperate position whereby Wat-ters and [Langley] could take advantage of Ms. Long’s desperate position by having Ms. Long enter into the financing arrangement set out below.
“37. With little over a month until the deadline for redemption, Defendant Watters, in collaboration with [Langley], provided the funds needed to redeem the [Conecuh property] in return for Ms. Long executing a quitclaim deed (“Wat-ters Deed’) on March 26, 2010, transferring all of her interest in [the Conecuh property].
“38. The grantee named in the Wat-ters Deed was ‘Langley and Watters, LLP.’
“39. Upon information and belief Defendant Watters and [Langley] own directly or indirectly most, if not all, of the equity interest in Langley and Watters, LLP.
“40. Defendant Watters acted willfully to advance his self-interest in derogation of Ms. Long’s interest thus breaching his fiduciary duty to his client.
“40.1 Defendant Watters has denied that he, Watters, had any conversations with the third party, as set out above.
“40.2 Defendant Watters insists that he, Watters, discovered the purchase for taxes of [the Conecuh property] while searching court records.
“40.3 Defendant Watters, responding to a request to explain how, he, Watters, had come to own [the Conecuh property], asserted ‘[Ms. Long] ended up borrowing the money (to finance the redemption) from a friend of mine and said she would pay it back, but never did. And in the meantime, she also owed me for past services and she said basically she would just sign over her interest to me and that’s what happened.’
“40.4 Defendant Watters prepared the quitclaim deed purporting to convey [the Conecuh property] to ‘Langley and Watters, LLP.’ (Watters deed).
[[Image here]]
“40.7 Defendant Watters caused the Watters Deed to be filed in the Probate *180 office of Conecuh County on or about October 20,2010.
[[Image here]]
“40.10 In letters dated October 11, November 22, December 4, December 23, of 2013, and January 23, 2014, the Administrator made five separate requests of Defendant Watters for copies of documents from Defendant Watters’s client files relative to his representation of Ms. Long, copies of documents bearing on the financing transactions [set out above] and copies of billings and remittances for legal work performed for Ms. Long.
“40.11 Defendant Watters is obligated to allow [Gamble] access to Watters’s client files relative to Watters’s legal representation of Ms. Long.
“40.12 Defendant Watters has refused to provide the Administrator with copies of the requested documents and has refused to provide the Administrator with an accounting relative to the prior legal work and the work done relative to obtaining a redemption of [the Conecuh property].
“40.13 The actual cost to redeem [the Conecuh property] was $2,321.28.
“40.14 The fair market value of [the Conecuh property] on the date it was redeemed would have been not less than $48,000.
“Wherefore, Plaintiff demands an accounting from Defendant Watters of all fees and costs charged to Ms. Long and remittances and property turned over to Defendant Watters by Ms. Long and that Defendant Long provide Plaintiff with copies of his client files, and, as further relief, Plaintiff asks for such other contractual and equitable remedies, compensatory and punitive damages as the facts will support, plus court costs.”
On May 9, 2014, Watters filed a motion for a summary judgment pursuant to Rule 56(b), Ala. R. Civ. P., in which he argued, among other things, that count one of the complaint, asserting a legal-malpractice claim based on a breach of fiduciary duty, was due to be dismissed because, he argued, the claim, sounding in tort, did not survive Long’s death. See § 6-5-462, Ala. Code 1975 (hereinafter sometimes referred to as “the survival statute”). Gamble filed a response, arguing, in part, that because Watters’s duty to Long arose from the 2002 employment contract, any alleged failure to adequately perform that contract should be asserted as a breach-of-contract claim and as an equitable claim alleging unjust enrichment, both of which would survive Long’s death. The trial court conducted a hearing, and, on February 13, 2015, it entered a judgment granting Wat-ters’s summary-judgment motion as to all counts in the amended complaint except count one—the legal-malpractice claim— and count four seeking to quiet title to the Conecuh property. On March 25, 2015, Watters petitioned this Court for a writ of mandamus; this Court then ordered answers and briefs.

II, Standard of Revieio

A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’” Ex parte Nall, 879 So.2d 541, 543 (Ala.2003) (quoting Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala.2001)).

III. Analysis

We must first determine whether Watters has demonstrated a clear legal right to a writ of mandamus directing the *181 Conecuh Circuit Court to vacate its order denying his motion for a summary judgment as to count one of Gamble’s amended complaint. “The general rule is that 1 “a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.” ’ ... In all but the most extraordinary cases, an appeal is an adequate remedy,...” Ex parte Jackson, 780 So.2d 681, 684 (Ala.2000); see also Ex parte Hodge, 153 So.3d 734 (Ala.2014), and Ex parte U.S. Bank Nat’l Ass’n, 148 So.3d 1060 (Ala.2014)(discussing narrow exceptions to the general rule that mandamus will not issue to review the merits of an order denying a summary-judgment motion).
Watters states that this case is appropriate for the writ of mandamus under Ex parte Hodge and Ex parte J.E. Estes Wood Co., 42 So.3d 104 (Ala.2010). Wat-ters provides no discussion of either case. Rather, using specific language taken from Ex parte Hodge, he states that it is clear from the face of Gamble’s complaint that count one, alleging legal malpractice based on a breach of fiduciary duty, sounds in tort and, thus, does not survive Long’s death. Watters asserts that he has no other adequate remedy at law because Gamble has requested a jury trial on the legal-malpractice claim, which, he says, would require “a great deal more effort, expense, and other problems which would not be caused by an ore tenus hearing.” Watters notes that if the claim is dismissed, the only remaining claim would be a claim seeking to quiet title to the Cone-cuh property, which is a nonjury equity matter.
In Ex parte Hodge, this Court narrowly expanded the scope of mandamus review where the defendants, whose summary-judgment motion was denied, were faced with the extraordinary circumstance of having to further litigate the medical-malpractice claim against them after having demonstrated from the face of the plaintiffs complaint a dear legal right to have the action against them dismissed based on the four-year period of repose found in § 6-5^82(a), Ala.Code 1975; that section is an absolute bar to all medical-malpractice claims brought more than four years after the cause of action accrues. In Ex parte Hodge, the Court emphasized:
“Here, it is clear from the face of the second amended complaint that Gertha underwent a surgical procedure in 2006; that Dr. Hodge left a surgical hemostat clamp in her body at that time; and that she filed a medical-malpractice complaint on March 5, 2012. It is clear from the face of the second amended complaint that Gertha suffered an actionable legal injury at the time of the surgery in 2006 when Dr. Hodge left the hemostat clamp in her body, regardless of when or to what extent the complications from the negligent act would be discovered. Therefore, her medical-malpractice complaint filed on March 5,2012, was barred by the four-year period of repose found in § 6-5^182(a). Because Gertha did not have a viable medical-malpractice action at the time of her death, David could not maintain a wrongful-death action. Hall [v. Chi, 782 So.2d 218 (Ala.2000) ]. Accordingly, we conclude that the defendants have established a clear legal right to the relief sought.”
153 So.3d at 745.
Watters does not premise his requested relief upon any applicable statute of limitations that would be a complete bar to the legal-malpractice claim. Rather, he claims that the survival statute dictates that the legal-malpractice claim, sounding in tort, be dismissed. See Gillilan v. Federated Guar. Life Ins. Co., 447 So.2d 668, 674 (Ala.1984)(“A claim sounding in tort for which no action has been filed does not *182 survive death in favor of the personal representative.”). Section 6-5-462, the survival statute, states:
“In all proceedings not of an equitable nature, all claims upon which an action has been filed and all claims upon which no action has been filed on a contract, express or implied, and all personal claims upon which an action has been filed, except for injuries to the reputation, survive in favor of and against personal representatives; and all personal claims upon which no action has been filed survive against the personal representative of a deceased tort-feasor.”
Suffice it say, it is not abundantly clear from the face of Gamble’s complaint whether the survival statute dictates dismissal of the legal-malpractice claim because the issue whether the claim sounds in tort, in contract, or in both for that matter, is sharply disputed by the parties. Watters cites this Court to Brooks v. Hill, 717 So.2d 759 (Ala.1998), holding that an unfiled claim alleging breach of fiduciary duty does not survive the death of the decedent. In response, Gamble asserts that, although count one alleges facts concerning breach of a fiduciary duty, it also alleges facts that would support a breach-of-contract action. See Rutley v. Country Skillet Poultry Co., 549 So.2d 82, 84 (Ala.1989)(“A court must look to the allegations in the body of the complaint in order to determine the nature of a plaintiffs cause of action.”). Specifically, Gamble asserts that Watters’s duty to Long arose out of the 2002 employment contract in which Watters was hired to obtain title to the Conecuh property and that the underlying action specifically involves a dispute over what fee, if any, Watters was owed for his legal services under the 2002 employment contract. Gamble cites Hamner v. Mutual of Omaha Insurance Co., 49 Ala.App. 214, 218, 270 So.2d 87, 90 (Ala.Civ.App.1972), which explains:
“There is little question but that the line of distinction between actions in tort and contract is thin and often nebulous in many instances. The courts of this State have recognized that under certain circumstances, for the breach of a contract there may be available either an action of assumpsit or one in tort. Wilkinson v. Mosel[e]y, 18 Ala. 288 [ (1850) ]; Mobile Life Ins. Co. v. Randall, 74 Ala. 170 [ (1883) ]; Vines v. Crescent Transit Co., 264 Ala. 114, 85 So.2d 436 [ (1955) ]; Garig v. East End Memorial Hospital, 279 Ala. 118, 182 So.2d 852 [(1966)]. The theory on which the cases have been decided is often difficult to discern, but basically may be stated that if there is failure or refusal to perform a promise the action is in contract; if there is a negligent performance of a contractual duty or the negligent breach of a duty implied by law, such duty being not expressed in the contract, but arising by implication of law from the relation of the parties created by the contract, the action may be either in contract or tort. In the latter instance, whether the action declared is in tort or contract must be determined from the gist or gravamen of the complaint. Basically, the line of division between the actions of contract and tort in such instances is that of nonfeasance and misfeasance. If there is a defective performance there is a breach of contract and may be also a tort. Law of Torts. Prosser, 4th Edition, page 614.”
Gamble also asserts that count one asserts claims for equitable relief, e.g., a demand for an accounting relative to the fees and costs charged to Long; for an accounting relative to the remittances and property turned over to Watters by Long; and for “such other contractual and equitable remedies,” based on, e.g., undue influ *183 ence based on Watters’s taking title to the Conecuh property—the very property he was hired to acquire for Long pursuant to the 2002 employment contract. Gamble emphasizes that claims equitable in nature survive the death of the decedent in favor of the personal representative. See § 6-5-464, Ala.Code 1975. We express no opinion concerning the merits of these arguments based on the materials before us. Rather, we conclude only that the issue whether count one of the amended complaint sounds in tort or in contract, being disputed, does not fit squarely within the context of Ex parte Hodge, where it was clear from the face of the complaint that the defendants were entitled to the relief they sought.

TV. Conclusion

This case does not come within an exception to the general rule that a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment. Accordingly, because Watters has another adequate remedy, i.e., an appeal, we deny his petition for the writ of mandamus.
PETITION DENIED.
STUART, MAIN, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially.

. Pursuant to the same 2002 employment contract, Watters filed a similar action in the Covington Circuit Court seeking a judgment declaring Long’s interest in property located in that county; in that case, Long received a one-third interest in 26 acres of real property upon the death of her stepmother—Barbara Joan Findley. On September 28, 2006, Long entered into another employment contract with Watters for representing her interest in the matter of the estate of her uncle—George Findley; that case involved real property located in Mobile County, Escambia County, Conecuh County, and Covington County. At the conclusion of that litigation, Long was awarded a judgment in the amount of $127,949.94.

. Gamble also named Langley & Watters, LLP, and Langley & Associates as defendants; Watters is sole petitioner in this case.

, Gamble states in his affidavit that he is the individual referred to in the complaint as the "third party.”