Rel: March 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of Southern Reporter. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in Southern Reporter.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0174

_____

## Ex parte Affinity Hospital, LLC, d/b/a Grandview Medical Center; and Community Health Systems, Inc.

## PETITION FOR WRIT OF MANDAMUS

## (In re: Joyce Pates

## v.

## Community Health Systems, Inc.; Affinity Hospital, LLC, d/b/a Grandview Medical Center; John Kirchner, M.D.; and Southlake Orthopaedics Sports Medicine and Spine Center, P.C.)

_____

### SC-2024-0184

_____

## Ex parte John Kirchner, M.D., and Southlake Orthopaedics Sports Medicine and Spine Center, P.C.

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Joyce Pates**

**v.**

**Community Health Systems, Inc.; Affinity Hospital, LLC, d/b/a Grandview Medical Center; John Kirchner, M.D.; and Southlake Orthopaedics Sports Medicine and Spine Center, P.C.**)

**(Jefferson Circuit Court: CV-23-900513)**

WISE, Justice.

The petitioners, Affinity Hospital, LLC, d/b/a Grandview Medical Center ("Grandview"); Community Health Systems, Inc. ("CHSI"); John Kirchner, M.D.; and Southlake Orthopaedics Sports Medicine and Spine Center, P.C. ("Southlake"), petition this Court for writs of mandamus directing the Jefferson Circuit Court to enter an order setting aside its February 14, 2024, order denying their motions to dismiss the claims of the plaintiff, Joyce Pates, against them and to enter an order dismissing Pates's claims against them.

Procedural History

On February 10, 2023, Pates sued CHSI, Grandview, Dr. Kirchner, and Southlake ("the defendants") in the Jefferson Circuit Court. Pates asserted medical-malpractice claims against the defendants pursuant to

the Alabama Medical Liability Act ("the AMLA"), § 6-5-480 et seq. and § 6-5-540 et seq., Ala. Code 1975.

The complaint alleged that, on or about July 31, 2020, Pates injured her right ankle; that, on August 10, 2020, she went to her primary doctor and an X-ray showed a distal fibula fracture; and that Pates's primary doctor referred her to Southlake for further evaluation. Pates further alleged that, on August 10, 2020, she saw Dr. Kirchner, a physician at Southlake's medical facility; that Dr. Kirchner advised her that she needed surgery on her right ankle; that Dr. Kirchner performed the surgery on August 20, 2020, at Grandview Medical Center; that, during the surgery, Dr. Kirchner inserted plates and screws to fix the fracture; that Pates remained in the hospital overnight; and that Pates was released from Grandview Medical Center on August 21, 2020, "after not exhibiting any medical distress." Pates went on to allege that she had at least six visits with Dr. Kirchner for postoperative care beginning on August 31, 2020; that she advised Dr. Kirchner that she had discomfort in her right leg; that X-rays were taken at Southlake's medical facility; and that "she was given oral medications and topical ointments to alleviate her discomfort through at least November 11, 2020."

3

Pates alleged that she did not receive any relief from the medications; that, on November 9, 2020, she went to the emergency room at UAB Hospital-Highlands in Birmingham due to "excruciating pain she was feeling in her right leg"; that medical personnel saw drainage from the wound that showed signs of infection; that the hardware was removed from her right ankle in a subsequent procedure performed on November 22, 2020; that she was prescribed additional oral medications after that procedure, "[b]ut the initial wound had not healed and [Pates] noticed more wounds on other parts of her right leg"; that, on January 29, 2021, Pates went back to the emergency room at UAB Hospital-Highlands; and that, after seeing the new wound on Pates's right thigh, Pates was transferred "to the main UAB Hospital for surgical evaluation." Pates alleged that she underwent surgical procedures to debride her right ankle on February 2, 2021, February 3, 2021, and February 5, 2021. Pates further alleged:

> "On or about February 11, 2021, [Pates] had her right leg amputated at the waist due to the advancing infection in her leg. She avers that she was told that amputation may be the only way to save her life. Prior to this date, she had no knowledge that the surgery on her ankle had caused this much damage."

She further alleged that she had two additional medical procedures after the amputation and that the wound around the amputation was ultimately closed on February 19, 2022.

In her complaint, Pates asserted a negligence claim against Dr. Kirchner in which she alleged:

> "31.  On or about August 20, 2020, the Defendant Kirchner performed a surgical procedure on [Pates] where he inserted medical plates and screws in her right leg.
>
> "32. That on at least six different occasions after the date of the surgical procedure, [Pates] complained of post-surgical discomfort in her right leg.
>
> "33. It was later determined that the medical appliances that were placed in [Pates's] leg by the Defendant Kirchner were covered in infection.
>
> "34. At all material times, Defendant [Kirchner] owed a non-delegable duty to [Pates] to exercise reasonable care and ensure that the medical hardware used in her surgery was safe for insertion.
>
> "35. Additionally, … Defendant [Kirchner] had a duty to properly inspect and diagnose [Pates's] injury.
>
> "36. [Pates's] injury was so pronounced that subsequent medical providers were able to identify the injury and take steps that saved [Pates's] life.
>
> "37. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendants, Ms. Pates became further injured and suffered a traumatic transfemoral amputation of her right leg.  Ms. Pates will in

the future suffer great pain, discomfort, and physical impairment, all of which injuries are permanent, and has been and will be kept from attending to her ordinary affairs and duties for the rest of her lifetime."

She also asserted a negligence claim against CHSI and Grandview in which she alleged:

"39. That during all of the times alleged herein that [Pates] was receiving medical care and treatment from Defendant John Kirchner, M.D., [that] Defendant was employed by Grandview Medical Center, which is a subsidiary of Community Health Care, Inc.[,] and he was acting within the scope of that employment.

"40. That Defendant Grandview Medical Center is responsible for the breach of applicable medical care occasioned by [its] employee, [Dr. Kirchner], which resulted in a physical injury to [Pates]."

Pates further asserted a negligence claim against Southlake in which she asserted:

"42. That during all of the times alleged herein that [Pates] was receiving medical care and treatment from Defendant John Kirchner, M.D., [that] Defendant was employed by Southlake Orthopaedics Sports Medicine and Spine Care, P.C., and he was acting within the scope of that employment.

"43. That Defendant Southlake Orthopaedics Sports Medicine and Spine Care, P.C. is responsible for the breach of applicable medical care occasioned by [its] employee, [Dr. Kirchner], which resulted in a physical injury to [Pates]."

6

Dr. Kirchner and Southlake filed a motion to dismiss Pates's claims against them pursuant to Rule 12(b)(6), Ala. R. Civ. P. In their motion, Dr. Kirchner and Southlake argued that Pates's claims against them were barred by the AMLA's two-year statute of limitations set forth in § 6-5-482(a), Ala. Code 1975. Subsequently, Grandview filed a motion to dismiss or, in the alternative, for a summary judgment, in which it also asserted that Pates's claims against it were barred and precluded by the AMLA's two-year statute of limitations set forth in § 6-5-482(a). It also asserted that Dr. Kirchner was not an employee of Grandview and attached an affidavit in support of its assertions in that regard. CHSI filed a motion to dismiss Pates's claims against it for lack of personal jurisdiction and an affidavit in support thereof. In a footnote, CHSI also stated:

> "Additionally, CHSI raises and asserts that it is alternatively entitled to dismissal pursuant to Ala. R. Civ. P. 12(b)(6), as a matter of law. [Pates's] complaint does not aver any fact or claim upon which relief could even potentially be granted against CHSI .... Instead, the only averment [that] could have even possibly been intended to reference CHSI is the contention that 'Grandview Medical Center … is a subsidiary of Community Health Care, Inc.' … which obviously avers no tortious conduct. Moreover, CHSI also adopts and asserts the defenses and arguments raised by Grandview as establishing a full and complete defense to any attempt to impose derivative liability on CHSI."

Pates did not file a response to those motions. On September 25, 2023, the trial court conducted a hearing on the motions.[1] On February 14, 2024, the trial court denied the defendants' motions. In its order denying the motions, the trial court stated:

"THIS MATTER came before the Court … on the [defendants'] Motion[s] to Dismiss. Present in Court was … counsel for the Plaintiff, Joyce Pates; … counsel for [CHSI] and Grandview …; and … counsel for [Dr. Kirchner and Southlake]. Evidence was presented and testimony heard ore tenus.

"The Defendants, [Dr. Kirchner], and Southlake[], and Grandview …, owned and operated by [CHSI], filed separate Motions to Dismiss pursuant to Rule 12(b)(6). It is well established that in considering whether a complaint is sufficient to withstand a motion to dismiss under Rule 12(b)(6), '"the appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief."' Crosslin v. Healthcare Auth. of Huntsville, 5 So. 3d 1193 (Ala. 2008) (quoting Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993)). In determining whether this is true, a court considers only whether the plaintiff may possibly prevail, not whether the plaintiff will ultimately prevail. Id.

"In the present case, [Pates] has presented evidence that her injury was caused by the [defendants]. She alleges that her injury occurred due to negligence by the [the defendants], who did not object that Ms. Pates was under the care of the

---

[1]The parties have not provided this Court with a transcript of that hearing.

physician, Dr. Kirchner and his medical practice at Southlake…. Nor was there any objection that the original procedure was performed at Grandview Medical Center, owned and operated by [CHSI]. Dismissal by way of … Rule 12(b)(6) '"is proper only when it appears beyond doubt that the plaintiff can prove <u>no set of facts</u> in support of the claim that would entitle the plaintiff to relief."' <u>Crosslin v. Healthcare Auth. of Huntsville</u>, 5 So. 3d 1193 (Ala. 2008).

"The [defendants] contend that the pleading of [Pates] is time-barred due to their understanding of the date of the injury to [Pates]. The time of the injury, in this matter, is in dispute. [Pates] alleges that she had no knowledge that she would have her leg amputated until she was told hours prior to the amputation. It is from there that she states her injury began, which would start her statute of limitations to file this Petition. In <u>Mobile Infirmary v. Delchamps</u>, 642 So. 2d 954 (Ala. 1994), the Court reversed a Rule 12(b)(6) Motion to Dismiss where the Plaintiff disputed the date a cause of action accrued ('… we cannot say that Delchamps can prove no set of facts that would entitle her to recover. Whether her claims are barred … depends on when in fact she first suffered the alleged legal injury ...'). [Pates] believes that it would be highly prejudicial to her and a miscarriage of justice to time bar a woman who lost her leg to negligence of the doctor and the facilities he used to treat her, when there are facts that support her claim that would entitle her to relief. Therefore, the [defendants'] Motions to Dismiss [are] hereby DENIED."

(Capitalization in original.) The defendants subsequently filed petitions for the writ of mandamus asking this Court to direct the trial court to set aside its February 14, 2024, order denying their motions to dismiss and to enter an order granting their motions.

<u>Standard of Review</u>

9

"'A writ of mandamus is an extraordinary remedy available only when the petitioner can demonstrate: "'(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" Ex parte Nall, 879 So. 2d 541, 543 (Ala. 2003) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).'

"Ex parte Watters, 212 So. 3d 174, 180 (Ala. 2016).

"'The general rule is that, subject to certain narrow exceptions, the denial of a motion to dismiss is not reviewable by petition for a writ of mandamus.' Ex parte Brown, 331 So. 3d 79, 81 (Ala. 2021). However,

"'[t]his Court has recognized that an appeal is an inadequate remedy in cases where it has determined that a defendant should not have been subjected to the inconvenience of litigation because it was clear from the face of the complaint that the defendant was entitled to a dismissal or to a judgment in its favor.'

"Ex parte Sanderson, 263 So. 3d 681, 687-88 (Ala. 2018) (citing Ex parte Hodge, 153 So. 3d 734 (Ala. 2014), and Ex parte U.S. Bank Nat'l Ass'n, 148 So. 3d 1060 (Ala. 2014)). In particular, in Ex parte Hodge, this Court permitted mandamus review of a trial court's denial of a motion to dismiss contending that the plaintiff's malpractice claim was barred by the four-year statute of repose contained in § 6-5-482(a), Ala. Code 1975, when the applicability of that statute was clear from the face of the complaint. Cf. Ex parte Watters, 212 So. 3d at 182 (denying a mandamus petition because 'it [was] not abundantly clear from the face of [the plaintiff's] complaint whether the survival statute dictate[d]

10

dismissal of the legal-malpractice claim because the issue whether the claim sound[ed] in tort, in contract, or in both for that matter, [was] sharply disputed by the parties'). Thus, if it is clear from the face of Mobile Health's complaint that the claims against Abbott are barred by the rule of repose or the applicable statute of limitations, then Abbott is entitled to mandamus relief.

"With respect to evaluating a trial court's denial of a Rule 12(b)(6) motion to dismiss,

"'[t]he appropriate standard of review ... is whether "when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [the pleader] to relief." Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993); Raley v. Citibanc of Alabama/Andalusia, 474 So. 2d 640, 641 (Ala. 1985). This Court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail. Nance, 622 So. 2d at 299. A "dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." Nance, 622 So. 2d at 299; Garrett v. Hadden, 495 So. 2d 616, 617 (Ala. 1986); Hill v. Kraft, Inc., 496 So. 2d 768, 769 (Ala. 1986).'

"Lyons v. River Rd. Constr., Inc., 858 So. 2d 257, 260 (Ala. 2003)."

Ex parte Abbott Lab'ys, 342 So. 3d 186, 193-94 (Ala. 2021).

"'"[A] Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim

11

that would entitle the plaintiff to relief." Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993) (citations omitted). "Next, the standard for granting a motion to dismiss based upon the expiration of the statute of limitations is whether the existence of the affirmative defense appears clearly on the face of the pleading." Braggs v. Jim Skinner Ford, Inc., 396 So. 2d 1055, 1058 (Ala. 1981) (citations omitted).'

"Jones v. Alfa Mut. Ins. Co., 875 So. 2d 1189, 1193 (Ala. 2003)."

Limon v. Sandlin, 200 So. 3d 21, 23-24 (Ala. 2015).

## Discussion

The defendants argue that the trial court erroneously denied their motions to dismiss on the ground that Pates's claims against them were barred by the AMLA's statute of limitations for medical-malpractice claims. Section 6-5-482(a) provides:

"All actions against physicians, surgeons, dentists, medical institutions, or other health care providers for liability, error, mistake, or failure to cure, whether based on contract or tort, must be commenced within two years next after the act, or omission, or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided further, that in no event may the action be commenced more than four years after such act; except, that an error, mistake, act, omission, or

failure to cure giving rise to a claim which occurred before September 23, 1975, shall not in any event be barred until the expiration of one year from such date."

In this case, it is undisputed that Dr. Kirchner performed the surgery during which he inserted the plates and screws to stabilize Pates's fracture on August 20, 2020. It is also undisputed that, starting on August 31, 2020, Pates had at least six postoperative visits with Dr. Kirchner and that she complained of discomfort in her right leg during those visits. She further asserted that "she was given oral medication … and topical ointments to alleviate her discomfort through at least November 11, 2020." Pates alleged that, "[a]fter not receiving any relief from the medications, and not satisfied with the diagnosis from Dr. Kirchner and Southlake, [she] sought additional medical help"; that, on November 9, 2020, she went to the emergency room at UAB Hospital-Highlands; that medical personnel saw drainage from the wound that showed signs of infection; that, on November 22, 2020, she underwent a subsequent surgical procedure to remove the hardware that had been placed by Dr. Kirchner; that she received additional medications after the surgery to remove the hardware, "[b]ut the initial wound had not healed and [Pates] noticed more wounds on other parts of her right leg";

that she went back to the UAB Hospital-Highlands emergency room on January 29, 2021; that she underwent surgical procedures to debride her ankle on February 2, 2021, February 3, 2021, and February 5, 2021; and that her right leg was ultimately amputated on February 11, 2021.

Pates did not allege that she received any medical treatment from Dr. Kirchner after November 2020. Additionally, based on the facts before this Court, it is undisputed that, in November 2020, there were signs of infection at the surgical site of Pates's August 2020 surgery; that, in November 2020, Pates had the hardware from that surgery removed; and that, even after receiving additional medications, "the initial wound had not healed" and Pates developed "more wounds on other parts of her right leg." (Emphasis added.) Rather than alleging that she did not suffer any injury until the amputation of her leg on February 11, 2021, Pates alleged that, before the amputation, "she had no knowledge that the surgery on her ankle had caused this much damage."

This Court addressed a similar situation in Ex parte Mobile Infirmary Ass'n, 349 So. 3d 842 (Ala. 2021). In that case, the plaintiff, John R. McBride, filed a complaint in which he listed the defendants as "'J.L. Bedsole/Rotary Rehabilitation Hospital,'" "'Mobile Infirmary

14

Association,'" and fictitiously named defendants. Id. at 843. In his complaint, McBride alleged that he had been admitted to the J.L. Bedsole/Rotary Rehabilitation Hospital ("Rotary Rehab") on June 2018 and "that, while he was a patient at Rotary Rehab, he 'suffered a decubitus pressure ulcer to his left and right heels, causing severe pain and suffering, infection, hospital treatment, financial loss, emotional distress, and eventually amputation below his left knee.'" Id. McBride asserted claims of negligence and wantonness. Subsequently, Mobile Infirmary Association ("MIA"), doing business as Rotary Rehab and Mobile Infirmary Medical Center ("Mobile Infirmary"), filed a motion to dismiss McBride's complaint on the ground that his claims were barred by the limitations period set forth in § 6-8-482(a). Specifically, MIA asserted that McBride had been discharged from Mobile Infirmary on June 2, 2018; that he had been discharged from Rotary Rehab on June 20, 2018; that the last day any claim could have accrued against Mobile Infirmary was June 2, 2018; that the last day any claim could have accrued against Rotary Rehab was June 20, 2018; and that McBride did not file his complaint until July 22, 2020, more than two years after any claims against either Mobile Infirmary or Rotary Rehab would have

15

accrued. McBride filed a response and a supplemental response to the motion to dismiss, in which he

> "argued that the legal injury forming the basis of his claims was the below-the-knee amputation of his left leg, which he contends occurred on July 23, 2018. Because he commenced this action within two years of the occurrence of that injury, McBride argued, his claims are not barred by § 6-5-482(a)."

Id. at 844. In its reply to McBride's response, MIA argued that the pressure ulcers referenced in the complaint were McBride's actual legal injuries; that those pressure ulcers were present before July 22, 2018; and that McBride's claims accrued more than two years before he commenced his action. After conducting a hearing, the trial court denied MIA's motion to dismiss, and MIA filed a petition for a writ of mandamus in this Court.

In this Court, MIA argued that it was clear from the face of the complaint that McBride's claims accrued more than two years before he filed the complaint and, therefore, were barred by the two-year statute of limitations set forth in § 6-5-428(a). In addressing this issue, this Court stated:

> "MIA cites, among other cases, this Court's decision in Mobile Infirmary v. Delchamps, 642 So. 2d 954 (Ala. 1994). In Delchamps, the Court stated the following general

16

propositions concerning the operation of the limitations period set out in § 6-5-482:

"'The limitations period of § 6-5-482 commences with the accrual of a cause of action. <u>Street v. City of Anniston</u>, 381 So. 2d 26 (Ala. 1980); <u>Bowlin Horn v. Citizens Hosp.</u>, 425 So. 2d 1065 (Ala. 1983); <u>Ramey v. Guyton</u>, 394 So. 2d 2 (Ala. 1981). A cause of action "accrues" under § 6-5-482 when the act complained of results in legal injury to the plaintiff. <u>Grabert v. Lightfoot</u>, 571 So. 2d 293, 294 (Ala. 1990); <u>Colburn v. Wilson</u>, 570 So. 2d 652, 654 (Ala. 1990). The statutory limitations period begins to run whether or not the full amount of damages is apparent at the time of the <u>first</u> legal injury. <u>Garrett v. Raytheon Co.</u>, 368 So. 2d 516, 518 (Ala. 1979). When the wrongful act or omission and the resulting legal injury do not occur simultaneously, the cause of action accrues and the limitations period of § 6-5-482 commences when the legal injury occurs. <u>Moon v. Harco Drugs, Inc.</u>, 435 So. 2d 218, 219 (Ala. 1983); <u>Ramey v. Guyton</u>, 394 So. 2d 2, 4-5 (Ala. 1981).'

"<u>Delchamps</u>, 642 So. 2d at 958 (emphasis added).

"McBride's complaint lists the following injuries he allegedly suffered '[a]s a direct and proximate result of [the defendants'] negligent [and wanton] acts and omissions':

"'a. A pressure ulcer to his left heel,

"'b. Severe pain and suffering,

"'c. Infection,

"'d. Wound deterioration,

17

"'e. Loss of dignity, and

"'f. Amputation of his left leg below the knee.'

"According to McBride's complaint, he was discharged from Rotary Rehab '[o]n June 20, 2018, ... with pressure ulcers present on both his left and right heels. [McBride]'s left heel pressure ulcer was recorded as unstageable with dark gray eschar and erythema and edema surrounding the wound.' His allegation is that, but for the negligent and wanton failure by the defendants to provide him with adequate care while he was a patient, he would not have suffered the injuries referenced in his complaint.

"Thus, based on the allegations set out in McBride's July 22, 2020, complaint, it is clear that he commenced this action more than two years after the alleged negligence and wantonness that caused the 'pressure ulcers ... on both his left and right heels' and 'the dark gray eschar and erythema and edema surrounding the' left-heel pressure ulcer. See Delchamps, 642 So. 2d at 958. Notwithstanding the inclusion of those injuries in his complaint, McBride does not appear to dispute in his answer to MIA's mandamus petition that any claims predicated on those injuries are barred by the limitations period set out in § 6-5-482(a).

"However, McBride argues that his cause of action did not actually accrue until his lower left leg was amputated. Specifically, he states:

"'McBride's injury developed on July 23, 2018, with his lower leg amputation .... The Complaint accurately identifies McBride's amputation as his injury, but describes the other factors of his medical condition in pleading the matter with specificity, as required by the Alabama Medical Malpractice Act. ... To affix McBride's statute of limitations to a medical condition that preceded

18

his <u>actual injury</u> would be considered unfair to any plaintiff.'

"McBride's answer at 8-9 (emphasis added).

"Thus, McBride appears to argue that the Court should view the amputation of his lower left leg as a separate or different injury from the 'pressure ulcers ... on both his left and right heels' and 'the dark gray eschar and erythema and edema surrounding the' left-heel pressure ulcer that were present when he was discharged from Rotary Rehab on June 20, 2018.  In other words, it appears that McBride believes that the amputation of his lower left leg constituted a separate and new cause of action altogether.  Put yet another way, McBride suggests that this case is like <u>McWilliams v. Union Pacific Resources Co.</u>, 569 So. 2d 702, 704 (Ala. 1990), 'wherein the damage complained of occurred at a date later than the actions of the defendants.'  <u>See also</u> <u>Ramey v. Guyton</u>, 394 So. 2d 2 (Ala. 1980)(holding that a plaintiff's cause of action did not accrue for the purposes of the two-year limitations period in § 6-5-482(a) until she suffered a stroke possibly caused by certain medication, notwithstanding the fact that the stroke occurred almost one year after the defendant had written the plaintiff's last prescription for the medication).  He also appears to suggest that the actual cause of his need for the lower-left-leg amputation is currently unknown but can be determined after discovery.  McBride's answer at 7.

"We emphasize that, at this stage of the proceedings, the applicable standard of review required the circuit court and requires this Court to view McBride's allegations most strongly in his favor and to consider only whether he might possibly prevail if he can prove his allegations.  <u>See</u> <u>Ex parte Abbott Lab'ys</u>, 342 So. 3d [186,] 194 [(Ala. 2021)].  The issue before us is not one of proof; rather, the issue is whether the action can be maintained if McBride's allegations are true. <u>See</u> <u>id.</u>

19

"However, our obligation to assume the truth of McBride's allegations likewise compels us to confront the reality that McBride's argument essentially amounts to an invitation for pure speculation by this Court. Specifically, to surmise, as McBride appears to suggest in his answer, that the eventual need for the amputation of McBride's lower left leg could have been an altogether new injury, totally unrelated to the injuries already present on June 20, 2018, would be a supposition that is not only absent from, but directly contrary to, McBride's actual allegations. Moreover, such speculation would fail to provide an explanation of any causal relationship between the defendants' alleged negligence and wantonness and the amputation.

"We note that McBride's complaint has not alleged that any negligent or wanton acts or omissions by the defendants occurred after he was discharged from Rotary Rehab on June 20, 2018. Therefore, to connect the alleged negligence and wantonness of the defendants in failing to properly treat McBride's pressure ulcers and related conditions to his lower-left-leg amputation, his complaint necessarily alleges that a causal chain exists between those conditions and the amputation. Specifically, as McBride describes it in his complaint, his allegation is that, after his discharge from Rotary Rehab, '[h]is left heel pressure ulcer continued to worsen and develop infections.' (Emphasis added.) If the need for the amputation was not a consequence of deteriorating circumstances brought on by the conditions present at the time of his discharge from Rotary Rehab, and therefore the defendants' alleged negligence and wantonness, the complaint is devoid of any allegation that the defendants' alleged negligence and wantonness caused the amputation.

"As MIA notes,

"'"'[this Court has] held that the statute begins to run whether or not the full amount of damages is apparent at the time of the first legal

20

injury.  In <u>Kelly v. Shropshire</u>, 199 Ala. 602, [604-05,] 75 So. 291, 292 (1917), the rule was stated as follows:

> "'"'"If the act of which the injury is the natural sequence is of itself a legal injury to plaintiff, a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed, be the actual damage (then apparent) however slight, and the statute will operate to bar a recovery not only for the present damages but for damages developing subsequently and not actionable at the time of the wrong done; <u>for in such a case the subsequent increase in the damages resulting gives no new cause of action</u>...."'"'

"<u>Moon v. Harco Drugs, Inc.</u>, 435 So. 2d 218, 220 (Ala. 1983) (quoting <u>Garrett v. Raytheon Co.</u>, 368 So. 2d 516, 519 (Ala. 1979), overruled on other grounds, <u>Griffin v. Unocal Corp.</u>, 990 So. 2d 291 (Ala. 2008)) (emphasis added).  <u>See also</u> <u>Ex parte Abbott Lab'ys</u>, 342 So. 3d at 194 ('"The statute of limitations begins to run when the cause of action accrues, which this Court has held <u>is the date the first legal injury occurs</u>." <u>Ex parte Integra LifeSciences Corp.</u>, 271 So. 3d 814, 818 (Ala. 2018).  "A cause of action accrues as soon as the claimant is entitled to maintain an action, <u>regardless of whether the full amount of the damage is apparent at the time of the first legal injury</u>." <u>Chandiwala v. Pate Constr. Co.</u>, 889 So. 2d 540, 543 (Ala. 2004).' (Emphasis added.)).

"It is clear from the face of McBride's complaint that his claims depend upon the notion that the amputation of his lower left leg was a 'natural sequence' of the alleged negligence and wantonness of the defendants while McBride

was a patient at Rotary Rehab. <u>Moon</u>, 435 So. 2d at 220. As McBride phrased it in response to MIA's motion to dismiss, his allegation is that the defendants' 'neglect placed [him] on a path toward his injury of surgical amputation.'

"Because McBride's injuries, 'however slight,' ultimately 'resulting' in the need for the amputation were already present when he was discharged from Rotary Rehab on June 20, 2018, it is likewise clear that 'the cause of action accrue[d] and the statute beg[an] to run' no later than June 20, 2018. <u>Id.</u> The eventual need for an amputation, or the 'subsequent increase' in McBride's injuries, 'gives no new cause of action.' <u>Id.</u>; <u>see also</u> <u>Grabert v. Lightfoot</u>, 571 So. 2d 293, 294 (Ala. 1990)('Certainly, Grabert was entitled to maintain an action against Dr. Lightfoot immediately after the May 1, 1987, operation, despite the fact that the extent of Grabert's injuries allegedly caused by Dr. Lightfoot's failure to find or to remedy the hernia may not have been fully known then.'), and <u>Street v. City of Anniston</u>, 381 So. 2d 26, 31 (Ala. 1980)(noting this Court's precedent holding that, when a legally cognizable injury occurs immediately upon the defendant's negligence, even though 'the actual injury initially incurred was so slight that it [i]s not discovered until years later, the cause of action accrue[s], nevertheless, at the time of the act or omission complained of').[5] Therefore, the two-year limitations period for McBride to commence his action imposed by § 6-5-482(a) expired on June 20, 2020. Because McBride did not file his complaint until July 22, 2020, this action was commenced outside the limitations period and is, therefore, barred.

"_____

"[5]In his answer to MIA's mandamus petition, McBride argues that his cause of action did not accrue until the amputation of his lower left leg on July 23, 2018, because, he says, that was the first time he could have recognized that his injuries were proximately caused by the defendants. McBride's answer at 10. It appears that McBride is arguing

that his cause of action did not accrue until he discovered the alleged negligence or wantonness of the defendants. However, this Court has previously explained that it will not apply a 'discovery rule' to a statute of limitations unless one is specifically prescribed by the legislature. See Coilplus-Alabama, Inc. v. Vann, 53 So. 3d 898, 908 (Ala. 2010)(quoting the appendix to Griffin v. Unocal Corp., 990 So. 2d 291, 311 (Ala. 2008)). Section 6-5-482(a) actually represents an instance in which the legislature has provided for such a rule, but the rule applies only in specified circumstances. See Vann, 53 So. 3d at 908. In particular, § 6-5-482(a) provides, in pertinent part:

> " '[I]f the cause of action is not discovered and could not reasonably have been discovered within [the two-year limitations] period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier ....'

"(Emphasis added.) As MIA points out on page 12 of its reply brief, the foregoing portion of § 6-5-482(a) has no application in this case because McBride discovered the defendants' alleged negligence and wantonness within the two-year limitations period set out in § 6-5-482(a). See Smith v. Bay Minette Infirmary, 485 So. 2d 716, 717 (Ala. 1986) ('It is only when the cause of action is not discovered in time to bring it within two years of the act or omission that the statute allows six months after discovery as an additional period in which the action may be commenced.')."

Ex parte Mobile Infirmary, 349 So. 3d at 845-49 (footnote 4 omitted).

In its order denying the motions to dismiss, the trial court stated:

"[Pates] alleges that she had no knowledge that she would have her leg amputated until she was told hours prior to the

23

amputation.  It is from there that she states her injury began, which would start her statute of limitations to file this Petition."

However, Pates's argument is similar to McBride's argument in Ex parte Mobile Infirmary that the amputation of his left leg was the legal injury that formed the basis of his claims, which was rejected by this Court.  As was the case in Ex parte Mobile Infirmary, it is clear that Pates's "claims depend upon the notion that the amputation of [her] … leg was a 'natural sequence' of the alleged negligence" of Dr. Kirchner during the August 2020 surgery and his subsequent postoperative care of Pates.  349 So. 3d at 848 (quoting Moon v. Harco Drugs, Inc., 435 So. 2d 218, 220 (Ala. 2021)).  In this case, Pates did not allege that she received any treatment from Dr. Kirchner after November 2020.  Additionally, the undisputed facts before this Court indicate that, in November 2020, there were signs of infection at the surgical site of the August 2020 surgery; that, in November 2020, Pates had the hardware from that surgery removed; and that, after that subsequent procedure, "the initial wound had not healed and [Pates] noticed more wounds on other parts of her right leg."  In her complaint, Pates did not allege that she had not suffered any injury

before the amputation of her leg on February 11, 2021. In the factual allegations of her complaint, Pates alleged:

> "As a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendants, Ms. Pates <u>became further injured</u> and suffered a traumatic transfemoral amputation of her right leg."

(Emphasis added.) She further alleged that her right leg was amputated "due to the advancing infection in her leg." Additionally, in her negligence claim against Dr. Kirchner, Pates alleged that, before the amputation, "she had no knowledge that the surgery on her ankle had caused this much damage." Based on these facts, it is clear that Pates's injuries, "'however slight,'" were present in November 2020; "that 'the cause of action accrue[d] and the statute beg[an] to run'" no later than November 2020; and that "[t]he eventual need for an amputation, or the 'subsequent increase' in [Pates's] injuries, 'gives no new cause of action.'" 349 So. 3d at 848 (citations omitted). However, Pates did not file her complaint until February 10, 2023, more than two years after any claim against the defendants would have accrued. Accordingly, her claims were barred by the two-year limitations period set forth in § 6-5-482(a). Therefore, the defendants are entitled to the dismissal of Pates's claims against them.

Conclusion

For the above-stated reasons, we grant the mandamus petitions and issue writs directing the trial court to set aside its February 14, 2024, order denying the motions to dismiss and to enter an order dismissing Pates's claims against the defendants.

SC-2024-0174 -- PETITION GRANTED; WRIT ISSUED.

SC-2024-0184 -- PETITION GRANTED; WRIT ISSUED.

Shaw, Bryan, Mitchell, Cook, and McCool, JJ., concur.

Stewart, C.J., and Sellers, J., concur in the result.

Mendheim, J., concurs in the result, with opinion.

MENDHEIM, Justice (concurring in the result).

I agree with the main opinion that Joyce Pates's claims against Affinity Hospital, LLC, d/b/a Grandview Medical Center; Community Health Systems, Inc; Dr. John Kirchner; and Southlake Orthopaedics Sports Medicine and Spine Center, P.C. ("the defendants"), are barred by the two-year statute of limitations in § 6-5-482(a), Ala. Code 1975, and that, therefore, the defendants are entitled to writs of mandamus. However, I disagree with the main opinion's reliance upon Ex parte Mobile Infirmary Ass'n, 349 So. 3d 842 (Ala. 2021), to support that conclusion because I do not believe the cases are analogous.

As the main opinion details, in Ex parte Mobile Infirmary Ass'n, the plaintiff, John R. McBride, asserted medical-malpractice claims against Mobile Infirmary Association, doing business as Mobile Infirmary Medical Center ("Mobile Infirmary") and J.L. Bedsole/Rotary Rehabilitation Hospital ("Rotary Rehab"), because of injuries he allegedly suffered while receiving care at Mobile Infirmary and Rotary Rehab. Among the injuries McBride alleged that he suffered as a result of negligent and/or wanton care from Mobile Infirmary and Rotary Rehab were pressure ulcers in his left and right heels, infection, and amputation

27

of his left leg below the knee. See Ex parte Mobile Infirmary Ass'n, 349 So. 3d at 846. McBride was released from Mobile Infirmary on June 2, 2018, and he was released from Rotary Rehab on June 20, 2018. According to his complaint, at the time of his discharge from Rotary Rehab, the pressure ulcers were present in both of his heels. The amputation of McBride's lower left leg occurred on July 23, 2018. McBride alleged that "but for the negligent and wanton failure by the defendants to provide him with adequate care while he was a patient, he would not have suffered the injuries referenced in his complaint." Id. at 846. McBride filed his complaint on July 22, 2020.

McBride conceded that the applicable statute of limitations barred claims based on his pressure ulcers. See id. However, he contended that the amputation of his lower left leg was a distinct injury and that his complaint was timely filed with respect to that injury. The majority in Ex parte Mobile Infirmary Ass'n disagreed, concluding that it was forced

> "to confront the reality that McBride's argument essentially amounts to an invitation for pure speculation by this Court. Specifically, to surmise, as McBride appears to suggest in his answer, that the eventual need for the amputation of McBride's lower left leg could have been an altogether new injury, totally unrelated to the injuries already present on June 20, 2018, would be a supposition that is not only absent from, but directly contrary to, McBride's actual allegations.

28

> Moreover, such speculation would fail to provide an explanation of any causal relationship between the defendants' alleged negligence and wantonness and the amputation."

Id. at 847. In essence, the majority reasoned that McBride's allegations required a finding that the pressure ulcer in his left heel caused the amputation of his lower left leg and that, because the pressure ulcer was present when McBride was discharged from Rotary Rehab, McBride had filed his complaint after the expiration of the applicable limitations period.

I dissented in Ex parte Mobile Infirmary Ass'n on the ground that, on the face of McBride's complaint, he had "commenced his action within two years of his leg-amputation injury." Id. at 851 (Mendheim, J., dissenting). I believed that the majority was reaching "a medical conclusion at the motion-to-dismiss stage of the litigation" by finding that the left-heel pressure ulcer was "the first onset of injury that eventually led to the leg amputation." Id. at 852, 851. I noted that McBride's complaint could be read as alleging that "the left-heel pressure ulcer was one medical condition McBride had, just as he had a right-heel pressure ulcer, but that the left-leg amputation was his actual injury." Id. at 851. "[I]t [was] at least possible that the left-[heel] pressure ulcer was not the

cause of the left-leg amputation" because McBride had a pressure ulcer in his right heel at the time of his release from Rotary Rehab, yet that had not led to the amputation of his right leg. Id. at 852. Moreover, McBride also had alleged other medical conditions at the time of his release from Rotary Rehab, such an infection. I therefore concluded that McBride's complaint could not be dismissed on a motion to dismiss based on a statute-of-limitations defense.

The factual allegations in this case present a different picture than in Ex parte Mobile Infirmary Ass'n. The relevant allegations in Pates's complaint are as follows:

> "14. On or about August 20, 2020, Dr. Kirchner performed the surgery on Pates's ankle fracture at Grandview Medical Center. The procedure was an outpatient procedure, and plates and screws were used to fix the fracture. Dr. Kirchner was the sole physician performing the surgery and he was the individual responsible for inserting and fixating the medical hardware inside of Ms. Pates.
>
> "....
>
> "16. [Pates] made at least six visits to see Dr. Kirchner at Southlake for post-operative care, beginning on August 31, 2020. During her appointments, she notified Dr. Kirchner that she was feeling discomfort in her right leg, which was the leg [on which] Dr. Kirchner performed the procedure.
>
> "....

"19. On or about November 9, 2020, [Pates] presented herself to the emergency room at UAB Highlands in Birmingham, Alabama to seek relief for the excruciating pain she was feeling in her right leg. Upon an initial evaluation, medical personnel saw drainage from the wound that showed signs of an infection. The hardware that had been placed in her ankle at the time of the surgery was removed in an additional procedure on or about November 22, 2020.

"20. [Pates] received prescriptions for more oral medications after the medical procedure on November 22, 2020. But the initial wound had not healed and [Pates] noticed more wounds on other parts of her right leg.

"....

"23. On our about February 11, 2021, [Pates] had her right leg amputated at the waist due to the advancing infection in her leg. She avers that she was told that amputation may be the only way to save her life. Prior to this date, she had no knowledge that the surgery on her ankle had caused this much damage.

"....

"25. That the standard of medical care applicable to the Defendant Dr. Kirchner prior to placing foreign bodies inside of a patient is to ensure that those bodies are free from infection or other harmful influences prior to usage. In this case, Dr. Kirchner, nor his proxy, did not properly inspect or evaluate the hardware that was placed inside of [Pates] or otherwise ensure that her injuries, as described after the procedure, were not a direct result of the insertion of the medical hardware that was used. As a direct and proximate result of these failures, [Pates] suffered a physical injury to her body. All of these failures amounted to a breach of the applicable standard of medical care.

"....

"31. On or about August 20, 2020, the Defendant Kirchner performed a surgical procedure on [Pates] where he inserted medical plates and screws in her right leg.

"32. That on at least six different occasions after the date of the surgical procedure, [Pates] complained of post-surgical discomfort in her right leg.

"33. It was later determined that the medical appliances that were placed in [Pates's] leg by the Defendant Kirchner were covered in infection.

"....

"37. As a direct and proximate result of one or more of the foregoing wrongful acts or omissions of the Defendants, Ms. Pates became further injured and suffered a traumatic transfemoral amputation of her right leg. ..."

(Emphasis added.)

The foregoing allegations clearly declare that the true injury in this case was an infection in Pates's right leg. The complaint plainly states that Pates "had her right leg amputated at the waist due to the advancing infection in her leg." In other words, the leg infection was Pates's first legal injury, while the leg amputation was a consequence of that injury. In fact, one could even say that the leg amputation was a treatment for Pates's leg infection because, as Pates asserts, "she was told that amputation may be the only way to save her life." Pates even describes

the leg amputation as a "further injur[y]" and as an illustration of how "much damage" had been caused by "the surgery on her ankle." Thus, unlike McBride in Ex parte Mobile Infirmary Ass'n, who never stated that the pressure ulcer in his left heel led to the amputation of his left leg, Pates directly and clearly states on the face of her complaint that the leg infection she had contracted led to the amputation of her right leg. Moreover, also unlike McBride in Ex parte Mobile Infirmary Ass'n, who "appear[ed] to suggest that the actual cause of his need for a lower-left-leg amputation [was] currently unknown but [could] be determined after discovery," 349 So. 3d at 846-47, Pates openly alleges that the cause of the infection was "that the medical appliances that were placed in [Pates's] leg by the Defendant Kirchner were covered in infection."

Consequently, in this case, the Court does not engage in speculation about the cause of Pates's injury in concluding that the amputation of her right leg was not her first legal injury and, therefore, that the date of the amputation was not the date from which her cause of action accrued. Pates's complaint states that the infection manifested on November 9, 2020; that was the date when the act complained of -- Dr. Kirchner's insertion of allegedly unsterile medical hardware into Pates's right ankle

-- resulted in a legal injury. See <u>Mobile Infirmary v. Delchamps</u>, 642 So. 2d 954, 958 (Ala. 1994). However, Pates did not file her complaint until February 10, 2023, which is clearly outside the applicable two-year limitations period. For this reason, the main opinion correctly concludes that the defendants are entitled to their requested relief of the dismissal of the claims asserted against them.